RADFORD v. FOLSOM ET AL.

1. **Conveyance:** FRAUD: EVIDENCE OF: PRACTICE IN THE SUPREME COURT. Evidence considered and held not sufficient to establish that a certain conveyance had been procured by fraud. In rendering judgment in a chancery cause, upon appeal, this court will not review the evidence in detail, but simply state its conclusions upon the facts.

2. ———: WHEN A MORTGAGE: PURCHASER FROM GRANTEE. A conveyance, where the grantee executed a bond to reconvey, upon the payment of a certain sum with interest, is a mortgage as to such grantee, and a purchaser, with knowledge of the transaction, takes by deed only the assignment of the grantee's interest in the property.

3. ———: ———: BOND: POSSESSION. In such case, where the grantor was in possession of the property when the conveyance and bond were executed, and no provision was made for the surrender of possession, he is entitled to retain possession of the same as against the grantee or a purchaser with knowledge.

4. ———: ———: ———: FORECLOSURE: RECEIVER. *Held*, that the obligor, in the bond set out in the opinion, had the right to discharge the same at any time during ten years after its execution; that the action was prematurely brought, as *nothing* was due on the bond when the decree was rendered in the court below; that the court should have dismissed the case; and that as the defendants were entitled to the possession of the property, the appointment of a receiver was unauthorized by law.

*Appeal from Pottawattamie Circuit Court.*

WEDNESDAY, JUNE 7.

THIS action was originally commenced in 1873 by Frank Folsom. He averred that he was the owner in fee of certain real estate, a large part of which was improved, and consisted

of business houses in the city of Council Bluffs, which were occupied by tenants; that the defendants had notified the tenants in occupancy of said real estate, that they were the owners thereof and forbade the payment of rent to the plaintiff, and demanded payment to themselves; and that said tenants refused to pay rent until the title of said property should be settled by the court. His claim of title was based upon a certain conveyance of the property from the defendants to Simeon Folsom, and conveyances of the same from Simeon Folsom to him. He asked the appointment of a receiver to take charge of the property and collect the rents pending the suit, and that upon a final hearing a decree should be entered finding the plaintiff to be the absolute owner of the property, and the possession thereof awarded to him, and for other proper relief.

The defendants answered, in substance, that at the time they executed the conveyance to Simeon Folsom, and as part of the same transaction, Simeon Folsom executed to them a certain bond by which the whole transaction was but a mortgage to secure the payment of certain sums of money; that the amounts secured by the contracts between the parties were not due; and that the plaintiff's only remedy was a civil action for the foreclosure of the mortgage when it should become due. The defendants also filed a cross-petition in which they alleged that the conveyance made by them to Simeon Folsom was obtained from them by the cunning, artifice, deceit and fraud of said Simeon, of which the plaintiff had notice at the time, and praying that the said deed and all deeds made thereunder be set aside and vacated and the title to the property quieted in the defendants. There was also a prayer for general relief.

To this cross-bill a replication was filed taking issue with its averments. Pending the action Frank Folsom conveyed a part of the property to Eliza F. Folsom and she became a party by petition in intervention, in which she claimed to be the owner of the property conveyed to her. Afterwards Frank Folsom became a bankrupt and George W. Radford, his as-

signee, was substituted as plaintiff. Shortly after the commencement of the suit a receiver was appointed who has had charge of the property since his appointment. There was a trial in the court below in 1879, and a final decree was entered declaring the deed to Simeon Folsom and the said bond to be a mortgage. The amount due thereon was ascertained by the court, and the defendants were given until June 1st, 1880, to redeem the property by paying the amount found to be due. Both parties appeal.

*Sapp, Lyman & Ament*, for plaintiff and intervenor.

*Ross & Mayne*, for defendants.

ROTHROCK, J.—I. The deed executed by the defendants to Simeon Folsom is dated May 29, 1871. It expresses a consideration of $21,000, and is an ordinary conveyance, but without covenants. Simeon Folsom executed to Frank Folsom two quitclaim deeds of the property, one of which was dated September 17, 1872, and expressed a consideration of $8,000; the other was dated November 22, 1872, and the consideration named therein was $13,225. The bond from Simeon Folsom to the defendant Jeremiah Folsom was dated the 1st day of June, 1871, and although it is quite voluminous it is necessary to a correct understanding of the questions involved in the case that it be set out in full. It is as follows:

"Know all men by these presents, that I, Simeon Folsom, of the city of Detroit and State of Michigan, am held and firmly bound unto Jeremiah Folsom    *    *    *    in the penal sum of $21,000, to the payment of which I hereby bind myself, my heirs, executors, etc., forever by these presents. The foregoing obligation is on the following conditions, viz: Whereas, the said Jeremiah Folsom and Sarah M. Folsom, his wife, have this day conveyed by quitclaim deed unto said Simeon Folsom the following described real estate, situated in the county of Pottawattamie, and State of Iowa."

Here follows a detailed description of the property.

"And, whereas, the aforesaid deed of conveyance, for the aforesaid real estate, was made by the said Jeremiah Folsom and wife to the said Simeon Folsom, in consideration of the sum of twenty-one thousand dollars ($21,000) paid at various times to Samuel F. Folsom, and in consideration of any sums of money the said Simeon Folsom may hereafter advance for the purpose of paying incumbrances now existing on said real estate, and for the purpose of liquidating the indebtedness of the said Samuel F. Folsom, now existing.

" Now, if at the end of ten (10) years from the date hereof, the said Jeremiah Folsom shall have paid to the said Siméon Folsom the sum of twenty-one thousand dollars (21,000) together with all the money the said Simeon Folsom may, prior to that time, have advanced, for the purpose of paying off incumbrances against said real estate, or for the purpose of liquidating the indebtedness of the said Samuel F. Folsom, together with interest on all the aforesaid several amounts of money, at the rate of ten (10) per cent per annum, compounded annually; and further, if at the expiration of the said ten (10) years all the indebtedness of the said Samuel F. Folsom, existing at the date hereof, shall have been liquidated by the said Jeremiah Folsom, or at the expiration of the said ten (10) years the said Simeon Folsom, by the sale of the aforesaid real estate, and the proceeds thereof, together with the lot and building on the north side of Broadway, in the city of Council Bluffs Iowa, known as Samuel F. Folsom's old store—and now particularly described as follows: the twenty-two (22) feet on Broadway of lot No. one hundred and eighty-seven (187) in the original plat of the city of Council Bluffs, Iowa, and running back same width to the alley, running from Main to Bryant streets in said city, on which is now situated the two-story brick store room• formerly occupied by Crossland & Folsom, as a dry goods store, and which said twenty-two (22) feet was sold to Frank Folsom on the 2d day of March, A. D. 1871, by the

sheriff of Pottawattamie county, Iowa, under an execution issued upon a judgment and decree of foreclosure against the same in the District Court of said county, wherein Frank Folsom was plaintiff, and Samuel T. Folsom and wife were defendants—shall have realized the aforesaid sum of twenty-one thousand dollars ($21,000) and the amount of money he may, prior to that time, have advanced for the purpose of paying off incumberances on the said real estate, or for the purpose of liquidating the indebtedness of the said Samuel F. Folsom existing at the date hereof, together with the interest on all these several amounts, at the rate of ten (10) per cent per annum, compounded annually, and if at that time all the indebtedness of the said Samuel F. Folsom, now existing, shall have been liquidated by the said Jeremiah Folsom, it being expressly stipulated that the said Jeremiah Folsom is to liquidate the bankrupt debts of the said Samuel F. Folsom, and that he is at liberty to use the assets of the said bankrupt estate for that purpose, then, and in that event, the said Simeon Folsom agrees to convey by quitclaim deed to Jeremiah Folsom, all the aforesaid real estate which may at that time remain in his hands, of that hereinbefore described, including the aforesaid lot and building known as Samuel F. Folsom's old store, on the north side of Broadway, in the city of Council Bluffs, Iowa, the title of which he is to acquire of Frank Folsom, and to account for the proceeds of any part of said real estate which may have been sold by him; provided all the conditions and stipulations in this instrument contained shall have been complied with, to the faithful performance of which, on his part, the said Simeon Folsom hereby binds himself, his heirs, executors, administrators and assigns. And it is further stipulated and agreed that the said Jeremiah Folsom shall have power and authority during the time for which this obligation shall remain in force, to make contracts for any and all the aforesaid real estate, at just and adequate prices for the same, and that the said Simeon Folsom shall make to the purchaser a good and

sufficient quitclaim deed to the real estate so sold by said Jere-
miah Folsom when the said Jeremiah Folsom shall have
paid to the said Simeon Folsom the purchase money for the
same at such just and adequate price as aforesaid. And it is
further agreed that if at any time the said Jeremiah Folsom
should wish to sell any part of the aforesaid property at a
price which the said Simeon Folsom shall not deem just and
adequate, and at which the said Simeon Folsom will not con-
sent to sell the same, then the said Simeon Folsom shall
choose one man, and said Jeremiah Folsom shall choose one
man, as arbitrators, and if the two thus chosen cannot agree,
then the said two shall chose a third man, and the arbitrators
thus chosen shall determine whether the said price is a just
and adequate one, and whether or not the property shall be
sold therefor; and it is hereby stipulated and agreed that the
said Simeon Folsom and Jeremiah Folsom shall abide by and
be governed by the said decision of said arbitrators.

"And it is further stipulated and agreed that at the end of
the ten (10) years from the date hereof, the said Simeon Fol-
som shall render to the said Jeremiah Folsom an account of
the said property, or the proceeds thereof, and further, the
said account shall be rendered and the conveyances hereinbe-
fore provided for, made by said Simeon Folsom, at any time
previous to the expiration of said ten (10) years, when the
said Jeremiah Folsom shall have paid to the said Simeon
Folsom, the aforesaid sums of twenty-one thousand dollars
($21,000), the amount of money which may, prior to that
time, have been advanced by the said Simeon Folsom to pay
off the incumberance on the said real estate, or to liquidate
the indebtedness of the said Samuel Folsom, existing at that
time, together with interest thereon at the rate of ten (10)
per cent per annum, compounded annually, and all the debts
of the said Samuel F. Folsom now existing, shall have been
liqudated, or the said Simeon Folsom shall have realized the
same out of the sale of said real estate or the proceeds thereof,
and all the debts of the said Samuel F. Folsom, now existing,

shall have been liqudated. And this obligation is on the further express condition that the said Jeremiah Folsom, shall, during the time in which this obligation shall be in force, use all his personal property to liquidate and pay off the aforsaid amounts of money agreed to be paid to said Simeon Folsom; and this obligation is on the further condition that the said Jeremiah Folsom is to receive no compensation for any services he may perform or for any care he may exercise in the care, sale or disposition of the property during the time this obligation shall remain in force. And this obligation is on the further condition that the said Jeremiah Folsom is to devote his time and labor to the business of liquidating the aforesaid items of indebtedness and to fulfilling the conditions of this obligation. And it is further stipulated that should any and all the conditions and provisions of this instrument be not faithfully performed according to the tenor thereof on the part of the said Jeremiah Folsom, then and in that event, at the expiration of the ten (10) years aforesaid the said deed of conveyance made this day by the said Jeremiah Folsom and wife to the said Simeon Folsom shall be absolute and shall operate to convey to him an absolute title to said real estate; and it is further stipulated that the said deed shall operate to convey to said Simeon Folsom an absolute title to all the said real estate which shall be sold during the ten years by the said Simeon Folsom, at, and from the time of the said sale or sales, by the said Simeon Folsom.

Witness my hand this 1st day of June, 1871.

(Signed) SIMEON FOLSOM.

The first question which presents itself to the mind in examining this record and the arguments of counsel is, should the conveyance from Jeremiah Folsom and wife to Simeon Folsom be canceled and set aside upon the ground that it was procured by fraud? Nearly all of the evidence in the case and much of the arguments of counsel are devoted to this question.

1. CONVEY-
ANCE : fraud:
evidence of:
practice.

Simeon Folsom is a resident of Michigan and is a brother of Jeremiah Folsom, who resides at Council Bluffs. Samuel F. Folsom is the son of Simeon, and resides at Council Bluffs. Frank Folsom, another son of Simeon, resides in Michigan. These were the places of abode of the respective parties named, for many years prior to the transactions which gave rise to this suit. Samuel F. Folsom had been for several years engaged alone and part of the time in a partnership firm in the sale of goods at Council Bluffs. His father Simeon and his brother Frank had advanced to him large sums of money, and in the spring of the year 1870 Simeon was indorser for him to a considerable extent. Samuel was largely indebted; was in fact, including his indebtedness to his father and his brother, hopelessly bankrupt. In April, 1870, Samuel Folsom and Jeremiah Folsom formed a co-partnership in the mercantile business, or rather Samuel took Jeremiah into his business as a partner. Jeremiah paid no money into the partnership when he went into it, but agreed to indorse the outstanding notes of Samuel to the amount of some 12,000 dollars or more. In June following Samuel Folsom was adjudged a bankrupt on the application of Simeon, his father, an assignee was appointed, and the stock of goods was seized as the property of the bankrupt. Jeremiah Folsom gave a delivery bond for the goods and continued the business in the interest of himself and wife for sometime, and sold the same on his own account. In making the schedule of his property Samuel Folsom included some of the real estate in controversy in this action as belonging to him, and this, with the claim for the goods which were seized, led to the negotiations which resulted in the conveyance of the property to Simeon and the execution of the bond from Simeon to Jeremiah. It is claimed by the counsel for Jeremiah that there was no valid debt due from Samuel to Simeon. That all the money advanced and obligations incurred were in the nature of advancements from the father to the son never intended to be enforced. We think this claim is not supported by the evidence.

It is also claimed that Jeremiah was induced by Simeon, and others, to enter into the partnership with Samuel for the purpose of embarrassing him by Samuel's bankruptcy, and that all the proceedings in bankruptcy, including the deed and bond, were a scheme to defraud him. This does not appear to us to be established by the evidence. The impression made upon the mind in reading the evidence is, that Jeremiah entered into this arrangement, made the deed and took his bond, with a full understanding of its nature and consequences, and without being deceived, oppressed or overreached. It would be an easy matter to avoid written obligations, if the showing in this case should be held sufficient to authorize such a finding. We must not be expected to review the evidence in detail. In the trial of actions in chancery anew, upon appeal, we can do no more than state our conclusions upon the facts.

II. The next question in the case is, was this transaction in the nature of a mortgage, in which Jeremiah was the mort-

2. ——: when a mortgage: purchaser from grantee.

gagor and Simeon the mortgagee. And here there can be no manner of doubt, that the court correctly found that the conveyance was intended as a mortgage or security for the payment of the amount named in the bond, and such sums as might thereafter be paid by Simeon as provided in the bond. Counsel for the plaintiff, as we understand them, concede that as between Simeon and Jeremiah, the transaction was a mortgage, but they contend that by the deed the legal title passed to Simeon, and having a power of sale under the bond, the sale to Frank Folsom divested the transaction of its character as a mortgage and invested Frank with the title in fee.

The deed and bond were both recorded before Frank Folsom made his purchase, and he had actual notice of the transaction. But we have no occasion to determine what would be the rights of a stranger who might have purchased the property and paid Simeon a consideration therefor. In other words, the facts in this case do not require us to determine

whether Simeon Folsom had the power to sell the property and make a good title to the purchaser. Frank Folsom was not a stranger to the transaction. The evidence shows that a large part of the $21,000 named in the bond was due from Samuel to Frank. At one time during the negotiations, something was said about making the deed to Frank, and the defendant prepared the draft of a bond accordingly. Simeon and Frank were in partnership in the wool business in Detroit, and the only consideration for the deeds from the former to the latter, was a cancellation of certain indebtedness from one to the other, growing out of their business. Frank Folsom having furnished a large part of the consideration for the deed and bond, was a party in interest, and in equity was entitled to be paid from the proceeds of the sales of the property the same as his father, and the deeds from his father to him were assignments of his father's interest in the property. And Eliza Folsom, intervenor, having taken her conveyance pending this action, has no rights except such as were conferred upon Frank Folsom by the conveyances to him.

III. We think the court below correctly found that under the bond Jeremiah Folsom was entitled to the possession of the property. He was in the possession when the deed and bond were executed, part of it being his homestead, and no provision is made for the surrender of such possession, but on the contrary the bond seems to imply that he was to have the "care" of the same. Of course if a valid sale of any part of the property had been made during the time named in the bond, such sale would have entitled the purchaser to possession; but as between the parties, and as we have seen, the plaintiff, Frank, was a party in interest, no change of the possession of the property was made by the deed and bond when considered together.

3. ——: ——: bond: possession.

IV. It is insisted by counsel for defendants, that the relief granted by the decree of the Circuit Court is not embraced in the issues. The issues, briefly stated, were as follows: The plaintiff claimed to be the owner of the property under the conveyances

4. ——: ——: ——: foreclosure: receiver.

made to him by Simeon Folsom. He demanded the possession, the appointment of a receiver pending the suit, and general relief. The defendants, by answer, set up the bond and claimed the transaction was a mortgage, and that it was not due. By their cross-bill they claimed that the deed and bond were void and invoked the aid of the court by demanding that they be so declared. There was also a prayer for general relief.

We do not think it proper to enter upon a discussion of the relief which might properly have been granted to the parties under these issues, if the amount for which Jeremiah Folsom was liable upon the bond had been due. In our opinion, the defendants had the right to discharge the bond by payment at any time within ten years, and that the plaintiff, standing as he did, in the shoes of Simeon Folsom, had no right of action to foreclose and cut off the defendants' right until June 1st, 1881. It was the defendants' right to pay the amount secured by the bond at any time prior to June 1st, 1881, and in the meantime they were entitled to the possession of the property as against Simeon Folsom and the plaintiff. The plaintiff's action was, therefore, prematurely brought. It may be that if the amount secured by the bond had been due when the suit was brought, or even if it had become due pending the action in the court below, the rights of the parties could have been adjusted and fixed under the issues as they were. But this we need not determine because the bond did not become due until a year or more after the decree was entered in the court below. The defendants never abandoned the defense, that the amount secured by the bond was not due. They insisted on that defense in the court below, and insist on it here. They did not offer to redeem, and make no such offer now, but claim that they tried the case upon the theory that the conveyances and bond were fraudulent, or if not fraudulent, that the bond was not due, and that they did not introduce their evidence upon the question as to the amount due upon the bond.

We think when the court found that the transaction was in the nature of a mortgage, and that it was not tainted with fraud, it should have further found that the amount secured by the bond would not become due until June 1st, 1881, and dismissed the action because it was the defendants' right to discharge their obligation at any time before due, without action.

We have had this cause under advisement for some time. Upon the first examination, some of us thought that the action of the court in entering the decree might be approved by modifying the decree, so as to extend the time for redemption to a date after the maturity of the bond. It was claimed by the defendants that the clauses in the bond reserving compound interest at the rate of ten per cent per annum was against public policy and usurious. We ordered a re-argument upon this and other questions in the case. Upon a re-examination of the whole record, we have concluded that the action should be dismissed without prejudice to the institution of such an action as the plaintiff may be entitled to maintain in the light of this opinion. Having found that the defendants were entitled to the possession of the property, it follows that the appointment of a receiver was unauthorized by law, and in the future adjustment of the amount necessary to redeem it may be that the question of usury may not arise, as the salary of the receiver and the costs and expenses attendant upon his management of the property may be sufficient to offset the annual interest on the amount due on the bond. However this may be, we do not deem it to be our duty to anticipate the question of usury and determine it in advance. Upon the plaintiff's appeal, the decree, so far as it declares the transaction to be a mortgage, is affirmed, and upon defendants' appeal, the cause is

REVERSED.