MARY E. LIBBY, and others, in equity,

*vs.*

GEORGE D. CLARK, and another.

Cumberland. Opinion May 18, 1895.

*Equity. Equitable Mortgage. Advances.*

Where a deed absolute in form is held for security only, the fact may be proved by parol.

So long as the instrument is one of security, the borrower has a right to redeem upon payment of the loan.

A mortgagee after foreclosure took possession of the premises and allowed the mortgagors with the aid of their son to manage the property until it should work itself clear by the payment of regular installments upon the principal and interest. This arrangement continued until the full pay was tendered the mortgagee, the funds for which were obtained by the son on another mortgage of the same property, he having procured the title thereto by a deed from the mortgagee. Prior to this last named deed the mortgagors had contributed towards the payment of the regular installments, but had ceased doing so, and the son continued making them until he procured the deed to himself. Upon a bill by the heirs to redeem, in which the validity of the last mortgage was admitted and affirmed, *held;* that if the son had had no interest in the property, no equity, he would take nothing under his deed as against the mortgagors, and the original mortgage in equity would have been discharged

by the payment of the mortgage in full; but inasmuch as he had an interest in the property arising from the payments made by him, he had an equity that worked a consideration for the deed to him in whatever form it might be; and that although absolute in form he held the deed as security only for his advances and expenses on account of the property.

*Held;* that upon payment of such advances and expenses, redemption may be had.

On report.

Bill in equity, heard on bill, answer and proof.

The case appears in the opinion.

*F. C. Payson, H. R. Virgin, and H. M. Davis,* for plaintiffs.
*B. D. and H. M. Verrill,* for defendants.

Sitting: Peters, C. J., Walton, Foster, Haskell, Whitehouse, Strout, JJ.

Haskell, J. The Portland Savings Bank held a mortgage from Mary Ann and Elliot F. Clark on certain real estate on Grove street, in Portland, to secure the sum of $10,900 that fell due in March, 1875. Foreclosure was commenced in April, 1877, and redemption expired in April, 1878. Meantime the mortgagors deposited, in sums of fifty dollars each, three hundred dollars and the same was entered on an existing account, entitled: "Bank book of Mrs. Mary Ann Clark, deposited by Elliot F. Clark on account of mortgage of Grove street property." June 18, 1878, after the time for redemption had elapsed, thirty-five dollars more were deposited upon the same account. In the following October, the Bank, George D. Clark, one of defendants, and his parents, Mary Ann and Elliot F. Clark, consummated an arrangement whereby the balance on the bank book, $610.37, was applied to the payment of interest on the mortgage notes, and the Bank and George signed the following writing:

"Memorandum of agreement between the Portland Savings Bank and George D. Clark in reference to the property on the corner of Portland and Grove streets, Portland, belonging to the bank, formerly under mortgage to the bank from E. F. Clark and wife.

"George D. Clark pays one thousand dollars in cash for lot numbered twelve on plan recently made by Edward C. Jordan, and to be recorded in the Cumberland Registry of Deeds, and pays taxes for 1878 on the whole property. Said Elliot F. Clark and wife receipt for the money on deposit in the Bank. George D. Clark is to hold possession of the remaining property so long as he shall pay the Bank seventy-five dollars a month from the date hereof, and shall keep the premises insured at his own expense for at least ten thousand dollars in the name of the Bank. The Bank pays all taxes after this date except as above."

At the bottom was added in pencil by the treasurer of the Bank :

"That provided George D. Clark shall pay the principal sum with interest accrued at six per cent to date and interest on same, he shall have a quitclaim deed of the property, and fix price on separate lots and moving small houses on street."

At the same time Mary Ann and Elliot F. Clark signed and delivered to the Bank : "Portland, October 23, 1878. Received six hundred and ten and thirty-seven and one-hundredths dollars, being amount in full, which amount is to be applied to paying interest on property on Grove street."

The treasurer of the bank testifies that, prior to the above agreement : "Mr. Elliot F. Clark came to the office in company with a man I had known as a boy but not by name, and said he, was satisfied he should be unable to redeem the property himself or to do anything at all in that direction, and he had made arrangements with his son, George D. Clark, to redeem the property or purchase it for him. That George was to carry it for his wife and himself, and that George had always helped him, and he had received no help from any other members of the family, and wished him to receive what benefit accrued. That Elliot F. Clark should collect the rents and deposit them on the Bank book, and Mr. George D. Clark was to make up the balance of seventy-five dollars a month, which was to be paid under this agreement." Thereupon the board of managers of the Bank, on the day before the above memorandum was signed, voted, "That the Treasurer be authorized to quitclaim the lot

of land forty feet by one hundred feet, with the two-story wooden building thereon, to George D. Clark, situated on Grove street; provided Elliot F. Clark and his wife shall turn over to the Bank the sum of $595.50 now standing on Bank book in name of Mary A. Clark, and shall pay the taxes for 1878, and that said Clark shall have and enjoy possession of the property formerly belonging to Mary Ann Clark and Elliot F. Clark so long as he shall pay the sum of seventy-five dollars per month out of which the Bank shall pay the taxes hereafter accruing."

In execution of the agreements above stated, George D. Clark entered into possession of the property and made his father agent to collect the rents and deposit them in the bank while he, from other sources, provided the balance called for by the agreement. This continued until the father died in 1880, when the bank made a new arrangement with George for redeeming the property of the following tenor:

"You are hereby appointed agent of this Bank to collect the rents and have in sole charge the property on the corner of Grove and Portland streets, being all the property this Bank now owns, formerly the property of Elliot F. Clark and wife. This agency shall exist for three years provided you shall pay sixty dollars every month and keep the buildings insured in the name of the Bank for $8000.00 and make all necessary repairs, without charge to this Bank; — should you or your heirs, executors or administrators effect sale of this property, all sums, received for such sale over and above the sums advanced by this Bank on the property, with six per cent interest, shall be paid to you; and any partial sale or sales of parts of the property shall be credited on account until the cost of the property, with interest as above, shall be satisfied, when this Bank will quit-claim to you or your heirs, executors, administrators, or assigns, the remaining parcels of land."

This arrangement substantially continued until 1891, the mother meantime having died, when the bank conveyed the premises, by warranty deed, to George for the expressed consideration of $7,150.54, and he at the same time mortgaged the same to the Union Mutual Life Insurance Company to secure

a loan of $6000, and thereafterwards claimed to hold the equity in fee. These plaintiffs, however, contend that he holds the estate as security merely, and that they are entitled to redeem from him the equity of the Insurance Company mortgage, which they affirm as valid inasmuch as the loan secured thereby was applied to the bank's debt against the property; and that is the purpose of this bill.

The record title shows a fee in George D. Clark. The Insurance Company is a bona fide mortgagee and takes a valid mortgage. But while Clark's title appears to be absolute, it may be shown to be held for security only, if such be the real truth of the case. *Rowell* v. *Jewett*, 69 Maine, 293; *Stinchfield* v. *Milliken*, 71 Maine, 567; *Lewis* v. *Small*, 71 Maine, 552; *Reed* v. *Reed*, 75 Maine, 264; *Jameson* v. *Emerson*, 82 Maine, 359.

The memory, sometimes moulded by self-interest, sees the more clearly as time runs on; but the logical inference from undisputed facts always shows true.

In 1875 the mortgage fell due. In 1877, interest fell in arrears and foreclosure was begun. Meantime rents were paid to the bank on account of mortgage on Grove street property. After redemption expired, the mortgagors took their son George to the bank, with the hope of saving their property and their home, and it was agreed that by his aid, and the application of the mortgagor's deposit to the mortgage debt, further time should be given. That is, George was to pay $1000 for lot No. 12, and seventy-five dollars a month. That he might do this, the Bank gave him possession of the property, and so long as he paid the seventy-five dollars a month and kept the premises insured, he might keep the possession; and when he should have paid "the principal sum with interest accrued and interest on same" he should have a deed of the property. Why should possession be given to George until he should pay "the principal sum with interest" if he were not to redeem? Could it have been the intention of the bank that, after he should have paid in a large part of "the principal sum with interest;" and failed to pay more, his right of redemption should cease, and that he should lose what he had paid voluntarily without any obligation

on his part to do so? He did not promise to pay seventy-five dollars a month or any other sum. He was permitted to do so until "the principal sum with interest" should be paid. What is that but redemption? "So long as the instrument is one of security the borrower has a right to redeem upon payment of the loan." *Linnell* v. *Lyford*, 72 Maine, 283.

But it is said that the arrangement was with George, the parents' rights having been absolutely foreclosed. Let us see. The value of the property was greater than the mortgage debt. After supposed foreclosure, if the parents were to have no interest, why should they pay upon the mortgage debt $610.37 of their own money then in the bank? The treasurer says: "That money was not our property until a settlement was made with them." Why should George, after taking a deed from the bank of lot 12, take a warranty deed of the same lot from the parents? Why, in two days after the agreement with the Bank, wherein George was to pay taxes for 1878, should he take a note from his father and mother for these very taxes? Why should he take a mortgage of this very property from his father to secure this note? And why, in 1884, should he write: " Brother Gus, I do wish you would look round and see if Charles Woodman or some one else will buy all of that property. I do want to get out of it and I meant to, so now I had rather let some one else have it besides the Saving Bank. The property owes about ten thousand dollars, of course we want to get more for it, but if I can't it will go for the bill what it owes. I am tired of lugging it and am going to get out of it just as soon as I can. Please see if you can't find some one that will buy it. I do wish we could get fifteen thousand dollars for it, but it will go just as soon as I can get rid of it. I am afraid if they take it I can't get my money out of it." Is it not for the plain reason that he engaged " to redeem the property " and to "carry it for his father and mother," as the treasurer of the bank says the father told him was the arrangement when he first brought George to the Bank?

The upshot of the transaction amounted to this. The Bank, as mortgagee, took possession, and allowed the mortgagors,

with the aid of their son, to manage their property until it should work itself clear, if seventy-five dollars a month and insurance, afterwards reduced to sixty, should be paid upon "the principal sum with interest." This arrangement continued until full pay was tendered the bank. Its mortgage was then redeemed, partly by the money of George and partly by the money of the mortgagors, and the bank's apparent fee was conveyed to George. If George had had no interest in the property, no equity, the conveyance to him from the bank would have given him no real title as against the mortgagors, and the mortgage, in equity, would have been discharged ; but, inasmuch as he had an interest in the property on account of the payments that he had made to the bank, he had an equity that could work a consideration for the conveyance to him in whatever form it might be.

Now, the bank, apparently holding a foreclosed mortgage, conveyed the property to George, who thereby apparantly took a fee, but really only a security for his advances. It was in his power, however, to destroy the equity by conveyance to a bona fide purchaser. This he did by giving a mortgage to the Insurance Company for a loan with which to redeem the bank mortgage, retaining an equity of redemption to secure himself for advances and expenses on account of the property. Upon the payment of these, redemption may be had.

The plaintiffs and defendants are all children and heirs of the mortgagors, and have inherited equal shares in the premises now held by the defendant, George D. Clark. Upon payment to him for advances and expenditures, including interest, the property should be divided equally among the parties to this suit.

Let a master take an account, and the equity of redeeming the Insurance Company mortgage be sold, and the proceeds be applied, first, to the payment of costs of this suit, second, to any claim found due George D. Clark, and, third, let the balance be divided equally among all the parties to this cause, share and share alike.

*Decree accordingly.*