ALBERT HARRINGTON, Plaintiff and Appellant, FRANK REYNOLDS, Receiver, Appellant, v. ROSANNA FOLEY, JOHN C. FOLEY and ELIZABETH C. FOLEY.

**Deeds as Mortgages.** Defendant and mortgagor agreed that defendant should procure an assignment of the mortgage, the mortgagor to furnish part of the consideration, and foreclose it, and within a year thereafter the mortgagor, was to repay him the amount advanced to procure the assignment, whereupon he was to assign to her the certificate of sale. Defendant procured an assignment of the mortgage, foreclosed it, and bid in the premises in his own name, but the mortgagor failed to repay him the amount advanced within the time specified, and a sheriff's deed to the premises was issued to the defendant. *Held*, that defendant held the title to the property only as security for the money advanced by him.

POSSESSION. Under Code, 1873, section 1938, providing that the mortgagor of real property shall retain the legal title and right of possession, the holder of the absolute title in fee to lands as security for a loan is not entitled to possession.

REDEMPTION. The owner of land to which another holds the title as equitable mortgagee is entitled to the statutory period of redemption after a decree fixing the status of the parties.

RECEIVER: *Costs.* A receiver appointed at the instance of the plaintiff in an action to quiet title is, where the validity of his appointment is unquestioned and his report unobjected to, entitled to his commissions and the expenses of his receivership, even though the defendant sustains his claim to the right of possession of the property.

PLEADING: *Relief.* Damages sustained by defendant in an action to quiet title, through the appointment of a receiver for the lands at plaintiff's request, cannot be recovered unless pleaded in the answer.

**Trusts:** PAROL TESTIMONY. Though the contract respecting the procurement of the mortgage was made in behalf of the mortgagor by an agent, who executed it in her name as principal, and part of the

3 consideration for the assignment of the mortgage furnished on behalf of the mortgagor was in fact the agents money, the mortgagor's beneficial ownership of the premises could be established by parol, it not being an attempt by the principal to establish a trust in the agent.

*Appeal from Woodbury District Court.*—HON. WILLIAM HUTCHINSON, *Judge.*

WEDNESDAY, MAY 10, 1899.

SUIT in equity to quiet title, for an injunction, and the appointment of a receiver, for an accounting and other equitable relief. Defendants claim that plaintiff's title to the real estate is held as security for money advanced, and is in fact a mortgage; deny that plaintiff has any interest in the crops raised upon the premises; and ask judgment for damages. A receiver was appointed, who took possession of the real estate, harvested the crops, and sold them under orders of court. The trial court found that plaintiff held title to the land as security for the payment of four thousand dollars; that defendants were entitled to the crops taken by the receiver, and were further entitled to damages by reason of the receivership; dissolved the injunction which had theretofore been granted; discharged the receiver; and taxed up all the costs and expenses of the receivership to plaintiff. A judgment was also rendered against Rosanna C. Foley for the amount of the loan, with interest, and special execution was ordered for the sale of the property, thus giving defendants the statutory period of redemption. Plaintiff and the receiver appeal.—*Modified, affirmed, and reversed.*

*Charles A. Dickson* for appellants.

*Kennedy, Jackson & Kennedy* for appellees Rosanna C. Foley and John C. Foley.

*C. W. Taylor* for appellee Elizabeth C. Foley.

Deemer, J.—Rosanna Foley and John C. Foley were for many years prior to the time this controversy arose the owners of the subject of the litigation,—a farm of about three hundred acres,—situated in Woodbury county, Iowa. They mortgaged the same to one Ormsby, trustee, to secure the sum of four thousand one hundred and seventy-five dollars. This mortgage matured June 1, 1892. About the time this mortgage matured, one Burd, who was Mrs. Foley's attorney, induced her to make a new loan of' the Security Company of Hartford, Conn., for the avowed purpose of taking up the Ormsby mortgage. Burd received the money advanced by the Security Company, and afterwards absconded, without paying the Ormsby mortgage. The holder of the Ormsby mortgage was threatening foreclosure, and Mrs. Foley, anxious to defeat the Security Company, consulted another attorney, who advised her that the Ormsby mortgage should be secured by some one who was friendly to her, and a foreclosure made in such manner as to practically defeat the Security Company's mortgage. Acting upon this suggestion, Elizabeth Foley, a daughter of Rosanna, induced the plaintiff to furnish four thousand dollars, which, with six hundred and sixty-two dollars and eighteen cents, to be furnished by the Foleys, would procure the Ormsby mortgage. At the time a contract was drawn up between the parties, which reads as follows:

"Whereas, an assignment has been made by R. S. Ormsby, trustee, and W. T. Tilford, beneficiary, of a certain mortgage executed by Rosanna Foley and John C. Foley, wife and husband, covering certain lands therein described, in Woodbury county, Iowa, which mortgage is recorded in Book 43 of Mortgages, page 285, in Woodbury County Records, to Albert Harrington, for the sum of four thousand six hundred sixty-two and 18-100 ($4,662.18) dollars; and whereas, the mortgage bond covered by said mortgage has also been transferred to said Harrington; and whereas, Elizabeth

C. Foley has, in fact, furnished some of said money: This memorandum is made as evidence of the respective rights of said Harrington and said Elizabeth C. Foley, viz.: (1) Of the moneys so furnished as aforesaid the said Harrington has furnished the sum of four thousand ($4,000) dollars, and the said Elizabeth C. Foley the sum of six hundred sixty-two and 18-100 ($662.18) dollars; that being the amount due upon the said bond and mortgage to the first day of February, 1895. (2). That the said Harrington is to foreclose the said bond and mortgage, and has employed Chase & Dixon as attorneys for such foreclosure, and said foreclosure shall be had without expense to said Harrington. (3) For the four thousand ($4,000) dollars paid by said Harrington he is to have back the principal and interest thereon at the rate of 8 per cent. per annum on or before one year from date, and upon payment of that sum he will assign the said bond and mortgage, or the judgment into which they may be merged, or the certificate of sale which he may have taken, as may be necessary, upon the payment to him of the said amount, and the said Elizabeth C. Foley is to have all excess of the amount received upon the said foreclosure. In case the premises should have been redeemed by the second mortgagee, or other party, the redemption money shall be proportioned as afore-said. The said Harrington shall receive four thousand ($4,000) dollars, with interest on said sum at eight per cent. (8 per cent.) per annum to the time of such redemption, and the said Elizabeth C. Foley shall receive all moneys in excess of such amount. The above-named parties have signed the memorandum this 2nd day of February, 1895. Albert Harrington. Elizabeth C. Foley." The money thus procured was paid to the holder of the Ormsby mortgage, and the note which it was given to secure, as well as the mortgage itself, was assigned to plaintiff Harrington. Shortly thereafter two actions were commenced by Messrs. Chase & Dickson, who were attorneys for Mrs. Foley, one to foreclose the Ormsby mortgage, and the other to set aside the mortgage given to the

Security Company.    The foreclosure suit went to judgment
on March 22, 1895, and the property was sold to plaintiff
Harrington under special execution April 23, 1895.    After
the sale, and before the equity of redemption had expired,
the Security Company, which was made a party to the fore-
closure suit, and served with notice by publication, appeared,
and filed a pleading, in which it claimed that its mortgage
was superior to that of the Ormsby mortgage.    Thus matters
stood until February 8, 1897, when a stipulation was entered
into, by the terms of which the Security Company withdrew
its answer and disclaimed any interest in the premises in
controversy.    All litigation with reference to the mortgages
being thus closed, plaintiff Harrington, on the eleventh day
of February, 1897, took a sheriff's deed to the property.    The
Foleys made an effort to secure money with which to re-pur-
chase the land, or to repay plaintiff the amount of his invest-
ment, but, failing in this, plaintiff, on September 20, 1897,
commenced this suit, in which he claimed to be the absolute
owner of the property; that defendants were committing
waste, and destroying the property, were making claim to the
crops growing thereon, and otherwise injuring his estate.
The defendants, as we have seen, deny the plaintiff's owner-
ship, plead that he holds the title only as security for the
repayment of the four thousand dollars advanced, and they
also pray for damages done their property by the receivership.

It will thus be seen that the primary question for solu-
tion is, how does the plaintiff hold the title acquired under
the sheriff's deed?    The evidence leaves no doubt in our
minds that plaintiff, at the instance of Elizabeth C.
Foley, who was at all times acting for her mother,
Rosanna Foley, advanced four thousand dollars to
assist in procuring an assignment of the Ormsby mortgage, to
the end that the mortgage of the Security Company might
be defeated, and the land preserved to the Foleys.    Plaintiff
did not intend to take title to the land.    He advanced the
money as a loan, and took the assignment of the mortgage

as security. True, he expected, and it was in effect, provided that he should be repaid within a year, but there is no provision in the written contract, nor is there any verbal evidence, that there should be a forfeiture of title in the event the money was not repaid. All parties expected that plaintiff should foreclose the Ormsby mortgage, as they were advised that this was the most effective method of attack upon the Security Company's incumbrance. The attack was succesful, and plaintiff finally obtained title through the sheriff's deed. These facts demand the application of the old equitable doctrine, "Once a mortgage, always a mortgage." See 3 Pomeroy Equity Jurisprudence, section 1193, and 3 cases cited. Appellant contends that, as Elizabeth Foley furnished part of the consideration for the assignment of the Ormsby mortgage, the interest which Rosanna Foley has in the land, if she has any, is a trust, which cannot be established by parol evidence. Were we required to determine who in fact furnished these six hundred and some odd dollars, we would have some difficulty in arriving at a satisfactory conclusion; but this we are not called upon to do. Elizabeth Foley acted as the agent of her mother, and this fact was well known to plaintiff. The money may have belonged to Miss Foley, but, as she treated it as belonging to her mother, there is no legal objection to our so considering it. If she had made a gift of this to her mother, none of the parties to this suit would have any right to complain. And we may so treat it for the purpose of meeting the argument made by counsel. No one contends that there was any change in the arrangement or contract between plaintiff and defendants after the written contract was entered into; and as equity looks to the substance, rather than the form, of the transaction, we have no difficulty in concluding that plaintiff holds the sheriff's deed as security for the amount of money advanced by him, as well as for counsel fees and expenses incurred in the litigation to defeat the Security Company mortgage. As sustaining our conclusions,

see *Bank v. Coonrod,* 97 Iowa, 106; *Rogers v. Davis,* 81 Iowa, 730; *Pond v. Eddy,* 113 Mass. 149; *Libby v. Clark,* 88 Me. 32 (33 Atl. Rep. 657).

Appellant further contends that, if it be found that he holds the title as security, then a definite time should be fixed in which Rosanna Foley shall pay him the amount of his claim, and the trial court erred in giving her the statutory period of redemption; and he relies upon the case of *White v. Lucas,* 46 Iowa, 319. In that case the vendor brought action to have an absolute deed declared to be a mortgage, offered to pay the amount due to the vendee, and asked that his title to the premises be quieted. He asked to be allowed to pay his debt, and the court ordered him to do so. Defendant in that case asked no equitable relief, and we there said that equity required plaintiff to make payment of the amount due before he could have the deed transformed into a mortgage. Yet further we said that the petition asked no such relief as an equitable period of redemption, and that, under the circumstances, it would be inequitable to give it. The case is more nearly like that of *Brush v. Peterson,* 54 Iowa, 243, wherein it is held that a mortgagor, who had given an absolute deed as security, was entitled to the statutory period of redemption. That action was very similar to the one at bar, and is conclusive of the question now under consideration. See, also, *Radford v. Folsom,* 58 Iowa, 473; *Fisk v. Stewart,* 24 Minn. 97.

Again, plaintiff claims that he is entitled to the crops grown upon the premises during the year 1897. This all depends on whether or not the sheriff's deed should be treated as a mortgage. If a mortgage, then defendants were entitled to possession until after the expiration of the period of redemption from a proper foreclosure of plaintiff's equitable mortgage. Code 1873, section 1938. There was no stipulation that plaintiff should have possession, and he never demanded it until about the time

of the commencement of this suit. We do not think the parties at any time contemplated that plaintiff should have possession of the land as security for his loan. The receiver was appointed, and a temporary writ of injunction was granted, on the theory that defendant Rosanna Foley was guilty of waste and destroying the value of the premises. Defendants filed no motion to discharge the receiver, nor did they move to vacate the injunction. In their answer they asked damages, due to the fact that they were prevented from preparing the land for the crops of 1898, for time and money expended in procuring counsel and in attending court, and for loss in being prevented from harvesting, caring for, and marketing the crops of the year 1897.

The trial court found that Rosanna Foley was the owner and entitled to the possession of the crops raised during the year 1897, which were taken possession of and sold by the receiver, and to the proceeds thereof now in the hands of the said receiver; awarded judgment against plaintiff in the sum of forty dollars, and directed said receiver to pay defendant the sum of four hundred and thirty-eight dollars and eighty-five cents, the amount received by him from the property taken into his possession, without deduction for expenses or for compensation to the receiver; discharged the receiver; and taxed all costs to plaintiff. Under the issues, tendered, this was error. The receiver made a report in which he showed that he had sold the property pursuant to an order of the court, that his expenses connected therewith amounted to the sum of one hundred and fifty-nine dollars and eighty-seven cents, and he asked for the sum of ninety dollars as compensation for his services. As no attack was made on the validity of his appointment, and no objections were filed to his report, he should have been allowed the sum asked; and, with this allowance deducted from his receipts, the available balance in his hands will be one hundred and eighty-eight dollars and ninety-eight cents, which sum should be paid to defendant by the receiver, as

there is no provision in the contract giving plaintiff a lien on the crops.

The award of damages to defendant as against the plaintiff was for pasturage on the premises during the fall and winter of 1897 and 1898. No such claim was made in the answer, and it was error to allow it. The receiver accounted for the straw and cornstalks which were upon the land, and there is no evidence of any damage done to the land. As the plaintiff had no lien upon the crops, the court should have ordered the receiver to turn over the balance above found in his hands to the defendant Rosanna Foley, and should have dismissed the defendants' counterclaim for damages. It should also have approved the receiver's report, and allowed him the compensation asked, and further ordered that upon turning over to Rosanna Foley the balance thus found due, and filing her receipt for the same, the receiver should be discharged, and his bond exonerated. If there had been a direct attack upon the appointment of the receiver, a different question would arise, and the case might be ruled by *French v. Gifford,* 31 Iowa, 428. But, as there was no such attack, the case is governed by *How v. Jones,* 60 Iowa, 70; *Radford v. Folsom,* 55 Iowa, 276; *Gallagher v. Gingrich,* 105 Iowa, 237; *St. Paul Title Insurance & Trust Co. v. Diagonal Coal Co.,* 95 Iowa, 551; *Jaffray v. Raab,* 72 Iowa, 335. The trial court was also in error in taxing the costs of the receivership to plaintiff. These fees and expenses should be paid out of the funds in the receiver's hands. The decree in so far as it finds the sheriff's deed a mortgage, and decrees a foreclosure and sale of the premises, is approved. The order made upon the receiver is reversed, and the judgment against plaintiff for damages for pasturage is also reversed. The case will be remanded for a decree in harmony with this opinion. It follows that the decree is, on plaintiff's appeal, MODIFIED and AFFIRMED; on the receiver's appeal, REVERSED.