HILAR KOOB, Appellee, v. CHARLES E. ZOLLER et ux., Appellants.
No. 45861.

APRIL 7, 1942.

John J. Kintzinger and Hogan & Less, for appellants.

E. J. Kean, for appellee.

BLISS, C. J.— In 1930, Charles E. Zoller bought a farm of the plaintiff for $7,000, for which he paid $1,000 in cash and.

gave his note for $6,000 secured by a purchase-money mortgage on the farm. In 1936 the plaintiff started suit to foreclose this mortgage, but the suit was compromised by defendants giving plaintiff notes for $3,500, secured by a mortgage for that amount on the farm. The notes were not paid as they matured, and interest thereon in the sum of $350 was owing on January 1, 1939. On January 23, 1939, the defendants, who were husband and wife, met the plaintiff at the office of the latter's attorney. At this time, the defendants gave to plaintiff their note for $350, due July 1, 1939, for the unpaid interest on the mortgage indebtedness. This is the note on which recovery was sought in this action.

At the same meeting, plaintiff's attorney prepared an agreement which was executed by the parties hereto. It recited in substance that: The plaintiff held the $3,500 mortgage and notes, upon which $52.40 had been paid on the principal, and interest had been paid to March 1, 1937; the defendants agreed to pay the delinquent taxes by February 1, 1939, and the $350 note by July 1, 1939, and upon default in these payments the plaintiff was to record a deed to the farm that day executed by defendants to plaintiff to be held in escrow by his attorney and to take possession of the farm; if the taxes and note were paid by July 1, 1939, the warranty deed was to be returned to the grantors; even though the deed was recorded, the $350 note and the unpaid taxes were to remain a liability of defendants; the defendants were to plant at least 25 acres of corn and 50 acres of oats in the spring of 1939; if defendants defaulted in the payment of the taxes and the note on July 1, 1939, the deed was to be recorded and possession of the premises delivered to plaintiff, with all growing crops thereon, and in case possession was taken by plaintiff the mortgage and notes secured thereby, except the $350 note, were to be returned to the defendants; no further claims were to be made by defendants for seed, labor, material, or equipment furnished by them in planting the crop, "and the entire crop and premises are to be peacefully turned over to the said Hilar Koob," and the plaintiff "agrees to commence no action of any kind on the notes and mortgage by him between now and July 1, 1939."

The defendants paid the taxes before July 1, 1939, but

had not paid the $350 note on that date. The defendants did not live on the farm, since there were no buildings other than a granary and corncrib. They did not deliver possession of the farm upon default in payment of the note on July 1, 1939, and the plaintiff did not demand or take possession. About the middle of July 1939, the defendants cut and threshed 940 bushels of oats, worth 40 cents a bushel. He testified that he thought they were his oats. He fed some of the oats. Some time later, but just when it does not appear, the plaintiff came on the farm and removed 700 bushels of the oats from the place, without the permission of defendants. About August 15, 1939, plaintiff's attorney sent to the defendants this letter:

"Dear Mr. & Mrs. Zoller:

"You are hereby notified that Mr. Hilar Koob recorded the deed as per agreement, and you are further notified that he will now take care of the premises including the crops, all of which is in accordance with the agreement which we had sometime ago. Kindly govern yourselves accordingly."

Plaintiff made no attempt to do as the letter stated. Neither did he deliver to the defendants the mortgage nor the notes secured by it. The defendants and their two boys had conducted all of the farming operations. They picked and cribbed the corn—1,200 bushels. It was worth 50 cents a bushel. The plaintiff converted this corn to his own use, without the consent of the defendants, in the fall of 1939. The defendants then left the farm.

No demand was made upon the defendants for the payment of the $350 note until the filing of the petition and the service of the original notice in this action on January 28, 1941. Neither the mortgage nor the notes secured by it had been surrendered to the defendants at that time. Plaintiff mailed these notes to defendants on March 10, 1941. A release of the mortgage, executed October 15, 1941, was filed for record on October 19, 1941, during or about the time of the trial.

The petition in this case set out the note, alleged its execution by defendants, and prayed for judgment. The rate of interest was 5 per cent. Defendants' answer alleged that the note was without consideration. It prayed for the dismissal of plain-

tiff's action and for damages of $915 for the conversion of the corn and oats. For reply plaintiff denied that he had taken any corn or oats that were the property of the defendants. The trial court directed a verdict for plaintiff on the note and against defendants on the counterclaim.

█ On this appeal the appellants assign error on the part of the court on each of these directions to the jury. In addition to the matters of fact already stated, it appears that Zoller was 49 years old, and, besides being a farmer, he had been engaged in operating a garage for several years. It also appears that he had no lawyer with him at the time the agreement was prepared on January 23, 1939, in the office of appellee's lawyer; nor does it appear that he had been advised as to his legal rights. From the record it appears that on January 1, 1939, the appellants owed appellee the face of the mortgage—$3,500—and accrued interest of $350, making a total of $3,850. This sum, with interest at 5 per cent per annum, would approximate $4,000 on November 1, 1939, when appellee took the corn. That would be the amount due then on the mortgage. For this indebtedness, what has the appellee taken from the appellants? He has taken a farm which sold for $7,000 in 1930, on which appellants paid $1,000. The purchase-money mortgage of $6,000 was reduced by compromise to $3,500. The appellants then had $4,500 in the farm, and that may be accepted as its fair value. If, to this sum, the value of the grain taken, or $915, be added, the appellee has taken from the appellants property to the value of $5,415, and in addition he recovered a judgment in this action of $390.11, in payment of a debt of $4,000. Appellee testified: "We agreed to carry him until July 1 without foreclosing on him but he insisted that he would want up until July 1 with redemption of this note and also to pay on the principal." He never did foreclose. Instead of foreclosing, instruments were executed, which, if they be construed as contended for by appellee, deprive the appellants of all rights to which they are entitled under a foreclosure. If these instruments did not in fact divest the appellants of title to this property, but were only instruments to secure payment of the appellants' indebtedness to appellee, then the corn and oats taken were the property of

the appellants which they were entitled to have applied to any indebtedness owing by them.

■ Transactions of this kind between a mortgagee and a mortgagor are looked upon with suspicion. The debtor is at a disadvantage in such a transaction. Here, he was a farmer, without the advice of counsel, seeking to protect himself against his creditor in the office of the latter's legal adviser. He owned a farm in which he had a substantial equity and which he and his family were trying to save. He paid all taxes that were due. He prepared the soil, procured seed, and planted and tended the crops. The appellee did nothing on July 1, 1939. The oats threshed in the middle of that month were almost sufficient to pay the $350 note. Appellee took the oats, but he did not apply the proceeds of their sale upon the note. Neither did he attempt to dispossess the appellants, but permitted them to pick the corn, which he took as soon as it was cribbed.

The principles of law applicable to such transactions were fully reviewed by Justice Garfield in our recent case of Guttenfelder v. Iebsen, 230 Iowa 1080, 1084, 300 N. W. 299, 301. We there state:

"To summarize the law applicable to this case, such a transaction as appellants seek to enforce will be closely scrutinized and upheld only where it is perfectly fair, based upon adequate consideration and it clearly and unmistakably appears that an absolute sale and not a transfer for security only was within the contemplation of the parties. In arriving at the intention of the contracting parties, courts look behind the form of the instruments to the real relationship between the parties. Fort v. Colby, 165 Iowa 95, 121, 144 N. W. 393. The instruments must be read in the light of the surrounding circumstances and the practical construction which the parties themselves placed thereon. [Citing decisions of this court.]

"It is to be observed that appellants and appellees did not deal on equal terms. Appellants were the creditors, appellees the debtors. Appellants were fully aware of their legal rights. Appellees were ignorant of their rights and acted without advice or counsel. Appellees were apparently of limited education, lacking experience in such matters. Appellants prepared

the instruments. This inequality, though in itself insufficient to impeach the transaction, is a circumstance.

"Authorities are numerous to the effect that an important inquiry in a controversy such as this is the value of the property compared to the mortgage debt. [Citing decisions of this court.] We think the fair inference from the testimony is that there was a substantial equity in the farm. * * *

"Another circumstance pointing to the conclusion reached by the trial court is that appellants did not at any time cancel or surrender the notes or the mortgage."

The facts in the case before us, and the gross inequity and injustice done the appellants, make the announced principles apply with especial pertinency and preponderant force in the determination of this appeal.

The principles stated in the cited cases are convincingly supported by citation and quotation of authority to the effect that such transactions are not only to be searchingly scrutinized but that any such instruments of transfer are to be regarded as but changes in the form or character of the security, and saving to the debtor his right of redemption in accordance with statutory prodecure, in the absence of clear showing to the contrary by the mortgagee. See 36 Am. Jur. 783, section 181; 19 R. C. L. 387, 389; 129 A. L. R. 1435, 1438; Morton Farmers Mut. Ins. Assn. v. Farquhar, 200 Iowa 1206, 1211, 206 N. W. 123; 65 A. L. R. 120; and other authorities cited in the Guttenfelder case.

This appeal is not before us for a review de novo and we are not passing upon the rights which the respective parties may have in this land, but we do hold that the trial court was in error in determining as a matter of law that the appellants had no property rights in the corn and oats and in directing a verdict for the appellee instead of permitting the jury to determine said question. The judgment is, therefore, reversed. —Reversed.

STIGER, SAGER, OLIVER, HALE, WENNERSTRUM, and GARFIELD, JJ., concur.