RUSSELL SWARTZ, appellant, v. GEORGE THOMAS STONE et al., appellees.

No. 47937.

(Reported in 49 N.W.2d 475)

OCTOBER 16, 1951.

REHEARING DENIED DECEMBER 14, 1951.

Bailey C. Webber, of Ottumwa, for appellant.

Stuart & Stuart, of Chariton, for appellees.

OLIVER, C. J.—The property here involved is a 234-acre farm in Wapello County, formerly owned in fee simple by Ernest Latta. It was and is encumbered by a recorded first mortgage to Metropolitan Life Insurance Company which had been reduced to about $12,600. Defendant Wilber L. Whisler loaned Latta

$4000 in 1945 and $3600 in 1946, evidenced by notes secured by a second and a third mortgage upon the land. In February 1948, these notes were in default. February 27 Latta conveyed the land to Whisler subject to the first mortgage and at the same time and as a part of the same transaction made a written contract with Whisler and his wife to purchase the property on installments for the amount owed on the Whisler notes and the first mortgage. These totaled $18,522.50. The evidence indicates the property was then worth some thousands of dollars in excess of that total.

Latta continued in possession of the land. Whisler retained Latta's notes. They were not cancelled. The deed from Latta to Whisler recited the two mortgages held by Whisler "are not merged in this deed or cancelled, but said mortgages shall remain in full force and virtue." Whisler testified the deed to Whisler and contract back to Latta was executed as security for the money Whisler had loaned Latta as represented by the notes.

Latta failed to make payments due under the contract and Whisler served notice of forfeiture which required the delinquencies ($1207.99) to be paid by January 15, 1949. January 15, Latta, Ray Shy and defendant George Thomas Stone called at the law and abstract office of Whorton & Truitt, Ottumwa, and told them Latta owned a farm which he was purchasing from Whisler on contract and that Whisler had given notice of forfeiture which would take effect at midnight. They sought to work out an arrangement whereby Latta's interest in the farm could be protected. Stone said he wanted to help Latta preserve his equity if possible, but wanted his own investment to be proper and safe. Stone called the lawyers into another room and told them in private he was interested in financing the farm because he had a $2850 check he could not collect.

The procedure first suggested was an assignment or conveyance from Latta to Stone and a contract back to Latta. Because of judgments, etc. against Latta the attorneys advised against this. It was decided the most practical way to refinance Latta's obligations to Whisler would be to permit the forfeiture to be completed and have Stone deal directly with Whisler. One of the lawyers telephoned Whisler. He said he was not interested in the property but only in the money.

Stone required Latta to deposit securities and money amounting to $1207.99 to secure him from loss of the $1207.99 required to be paid Whisler that evening to make redemption, in case judgments or liens affecting the property should be later discovered which would make Stone decide not to complete the deal. That evening Stone, Latta, Shy and the attorneys called at the Whisler home. They asked Whisler and wife to convey the property to Stone, telling them Stone was taking over the deal so Latta would not lose his land. The Whislers agreed to do this. Stone paid Whisler $1207.99 (the amount required to place Latta's contract in good standing) and Whisler and wife contracted to convey the property to Stone. The total consideration of the Whisler-Stone contract was $18,856.61. There was evidence the farm was then worth about eight or ten thousand dollars more than that.

Stone and Latta agreed if Stone decided to go through with the deal Stone would furnish the money to take care of other attachments, judgments and charges against the land, in addition to the payments to Whisler. While Latta and Stone were at the attorneys' office January 15, Latta was advised his agreement with Stone should be reduced to writing. However, the time for redemption from forfeiture would expire in a few hours and the terms of the agreement were not then discussed. Latta told the lawyers he had no choice in the matter and that he trusted Stone.

February 8, 1949, Stone paid the Whislers $5348.62 and they completed performance of their part of the contract by conveying the property to him by special warranty deed, subject to the first mortgage balance of about $12,300. The warranty excepted the "validity of Latta contract cancellation, which purchaser takes as is." They also turned over to the attorneys for Stone the two notes and the mortgages made by Latta to Whisler.

About that time, at Latta's request, the attorneys tried to get the agreement between Stone and Latta reduced to writing. Stone refused. Stone continued to advance money to and for Latta, who was in possession of the farm. According to Stone this possession was without any agreement between Latta and Stone. Stone testified that during the spring and summer of 1949 he made no inquiry about the farm, "I was just waiting for him to pay me off." Latta told Stone he had applied for a farm

loan and Stone checked and found that was true. In August plaintiff Russell Swartz, a practicing attorney, and Latta called to see Stone about the matter. Stone said he could not give them a figure on the amount it would take to clear Latta until a pending suit brought by a man named Bucher was disposed of. ·

Later Stone learned Latta had rented the farm to someone. Stone testified, "* * * I couldn't see how he was going to pay me if somebody else was getting half the crop and he was promising he was going to get a loan or sell it, and I told him I was done and wouldn't go no further."

Stone instituted against Latta a landlord's attachment suit and an action in forcible entry and detainer. April 6, 1950, Latta contracted to sell the farm to Swartz for $29,000 and on the same date executed a quitclaim deed to Swartz. Thereafter Swartz instituted this action in equity to have the deeds to Whisler and Stone declared mortgages, to establish and quiet his title in the land and to secure an adjudication of the amount to be paid Whisler and Stone to redeem it from the indebtedness of Latta to them.

The trial court dismissed the action, holding Latta's interest in the land was forfeited by his failure to perform the conditions of the Whisler notice of forfeiture, Stone took the property free from any rights of Latta and from any liens except the first mortgage, Latta had no interest in the property when he made the quitclaim deed to plaintiff and plaintiff acquired no interest in the land thereunder. It is our conclusion these holdings and· the dismissal of the action were erroneous.

I. The record shows without substantial dispute the conveyance by Latta to Whisler and the subsequent conveyance by Whisler and wife to Stone were merely transactions to secure payment of the indebtedness of Latta and did not divest Latta of the equitable title to the land. It is the rule that where the mortgagor deeds the property to the mortgagee the deed is presumed to be but a continuation of the security and the right of redemption is presumed to continue. This right is a favorite of equity and the transfer will operate as a bar only when it clearly appears both parties intended an absolute sale. In determining such intention courts look behind the form of the instruments to the real relationship between the parties. Davis v. Wilson, 237

Iowa 494, 498, 21 N.W.2d 553; Guttenfelder v. Iebsen, 230 Iowa 1080, 300 N.W. 299; Koob v. Zoller, 231 Iowa 1106, 1110, 1111, 3 N.W.2d 130, 132, 133; Fort v. Colby, 165 Iowa 95, 120 et seq., 144 N.W. 393.

It is also well established that where one purchases real estate and borrows the purchase price from a third party the purchaser may have the title pass direct from the seller by deed to the third party, and may establish by parol that the same is, in fact, a mortgage held by the third party solely as security for the purchase price so advanced for the purchaser. Brown v. Hermance, 233 Iowa 510, 514, 10 N.W.2d 66; Jones v. Gillett, 142 Iowa 506, 118 N.W. 314, 121 N.W. 5; Davis v. Wilson, 237 Iowa 494, 21 N.W.2d 553.

In this case Whisler continued to hold Latta's notes after the conveyance to Whisler and until he conveyed to Stone, to whose attorneys he delivered the uncancelled notes and mortgages. Latta continued to possess the farm and to owe the debts represented by these instruments, as well as the first-mortgage obligation. The record shows the value of the land exceeded these obligations by about eight or ten thousand dollars. These circumstances are evidence the conveyances to Whisler and Stone were intended as security. Guttenfelder v. Iebsen, supra, 230 Iowa 1080, 1084, 1085, 300 N.W. 299.

Aside from the foregoing and other considerations, Whisler as a witness frankly acknowledged the deed to him and contract back to Latta was a security transaction for the money Latta owed him. There is no conflict in the evidence upon that proposition. The rights of redemption under such a transaction are those fixed by law, not what the parties may conceive them to be. Brown v. Hermance, 233 Iowa 510, 514, 10 N.W.2d 66; Guttenfelder v. Iebsen, 230 Iowa 1080, 1086, 300 N.W. 299, 303.

In this connection it may be noted the $1207.99 payment by Stone for Latta to the Whislers the evening of January 15, 1949, actually constituted performance of the defaulted terms and conditions of Latta's contract and the so-called forfeiture could not, in any event, have become effective. Moreover, the record indicates the Whislers make no claim to or against the property. They transferred their lien and the legal title to Stone in the exact form and manner requested by Latta and Stone. This con-

veyance was for security and did not operate to transfer Latta's equitable ownership in the property or cut off his right of redemption. Hence, plaintiff, as Latta's grantee, has that right.

II.  Because the trial court decided Latta had no interest in the land when he conveyed it to plaintiff the court did not determine the amount necessary to redeem or the terms of redemption. Our decision to the contrary makes such adjudication necessary. We have concluded the trial court is in the better position to conveniently determine this because the trial court may require evidence of transactions subsequent to the original trial (we understand a receiver is now handling the farm) and may require or receive additional evidence upon transactions prior to such trial. Therefore, the cause is remanded for such further proceedings and judgment as may be deemed necessary to dispose of the case.—Reversed and remanded.

All JUSTICES concur.