Elmer KOCH and Lucille Koch, Appellees,

v.

Jasper E. WASSON and Marie A. Wasson, Appellants.

No. 53061.

Supreme Court of Iowa.

Sept. 17, 1968.

Louis J. Kehoe, Washington, and Ralph L. Neuzil, Iowa City, for appellants.

Bailey C. Webber, Ottumwa, for appellees.

BECKER, Justice.

Plaintiffs bring action in three counts to recover title to and possession of 218 acres of Washington County farm land conveyed by them to defendants in February 1961. In Count I plaintiffs allege they conveyed legal title to the land to defendants and received back an option agreement allowing them to repurchase the property on stated terms, all as a part·of a security transaction. They pray the deed be construed as a mortgage, title to the real estate be quieted in them subject to a lien in favor of defendants, in an amount to be computed and determined by the court and for general equitable relief.

Under our view of the case, the issues raised in the next count are moot. We therefore do not discuss Count II.

In Count III plaintiffs allege exercise of the option created a binding contract with defendants, they are ready to pay the amount found to be due under the option contract, ask that such sum be determined, a chance to pay, and for general equitable relief.

The trial court found against plaintiffs on the first two counts but in their favor on the third count, ordered plaintiffs to pay $6,200 (the option price), $1,340.30 (the 1961 to 1964 taxes), the costs of the improvements placed on the real estate by defendants, ordered defendants to pay all taxes for years 1965 through 1967, awarded crops and income for the crop years to and including 1967 to defendants, allowed defendants to file supplemental claim for costs of improvements to the farm (which was not done), ordered defendants to present to the clerk current abstract of title and deed to plaintiffs and, on approval thereof, defendants were to get the sums provided for and plaintiffs were to get the property. Possession was to be seasonably delivered after the crops were harvested.

Defendants contend the deed, regular on its face, conveyed title to them: the plaintiffs failed to exercise their option properly and the property now belongs to defendants. Plaintiffs have cross-appealed. They contend the court should have allowed their Count I claim and considered the fair rental value of the property during the years defendants have had possession in fixing the amount plaintiffs must pay for the return of the land. We find the contract between the parties was a security transaction. We agree with the result reached by the trial court with one exception. Plaintiffs were entitled to possession within a reasonable time after January 29, 1965. Defendants are therefore liable for the fair rental value of the farm since March 1, 1965. We therefore remand, modify and affirm.

I. Early in February, 1961, Elmer Koch was indebted to his brother-in-law in the sum of $2,800 and had other debts he desired to pay. He sought a $5000 loan from defendant Jasper Wasson. Koch insists he eventually got the $5000 as a loan. Wasson equally insists he did not make a loan but told Koch he would buy the farm for $5000 and actually did buy the farm for that sum.

On February 9, 1961, the parties met at the office of Ralph L. Neuzil, attorney for defendants and a brother of defendant Marie A. Wasson. A contract for the sale of land was drawn and signed. This contract called for payment of $750 on execution of the contract and $4250 upon deliv-

ery of deed. The contract is silent as to purchase rights. The Kochs deny they understood this to be a contract for the outright sale of land.

On February 17, 1961, the parties met in the office of Louis J. Kehoe, also defendants' attorney. At that time a warranty deed from the Kochs to the Wassons was prepared and executed and the Kochs got their $4250., part of which was paid directly to their creditors. An option to purchase was also prepared and executed. The latter instrument provided the Kochs should have the option to repurchase the land by paying $5000, plus $300 per year, plus taxes accrued or paid by sellers, plus reimbursement for improvements. The option was to be exercised by written notice, delivered to sellers at their home at least 30 days prior to March 1st of any subsequent year to and including 1965. Upon payment of the stipulated sums defendants were to deliver abstract of title, showing good title in them, and warranty deed transferring the property to plaintiffs.

Both Mr. and Mrs. Koch said they wanted to have the option agreement examined by their attorney but Mr. Neuzil said: "Well now, it is either this or nothing.", and the matter would have to be concluded that day or the Wassons didn't want to go ahead with it. Mr. Wasson stated he did not remember such a request.

Defendants took possession of the farm immediately.

Plaintiffs both testified they intended to negotiate a loan with the deed as security and thought they had done so. Defendants testified the $300, added to the principal for each year the option remained unexercised, represented 6% interest on $5000 and during the period from February 17, 1961 to March 1, 1965 they regarded the Kochs as owing them, the Wassons, $5000. Mr. Wasson also testified on redirect examination, "My understanding of P–3 (the option agreement) was to receive $5000 plus $300 a year, plus taxes, plus improvements if the option was exercised. If the option was not exercised, the farm was to

be mine. My understanding as to when the farm should be mine was March 1, 1965." Mrs. Wasson also testified she regarded the Kochs as owing $5000, and if it was not repaid by March, 1965 then the farm was to be theirs (Wassons). This testimony is inconsistent with the theory that the February 17, 1961 deed was intended to convey unconditional title at the time of delivery and is consistent with the argument that the deed was, in fact, a security instrument.

II. The problem raised by Count I is succinctly stated in Brown v. Hermance, 233 Iowa 510, 514, 10 N.W.2d 66, 68, "The only real issue is whether appellant had a mere option to purchase the property from appellee or whether appellee took title as security for a loan for part of the purchase price."

The basic general rule controlling our review was clearly stated as early as 1865 in Trucks v. Lindsey, 18 Iowa 504. "A conveyance absolute on its face may, by proper evidence, be shown to be but a mortgage, and parol testimony is admissible and competent to establish such fact. * * *

"It is a rule of equity that the right to redeem attaches necessarily and conclusively to every grant made as a security. In other words, equity forbids an irredeemable mortgage."

More recent decisions couch the rule against denial of redemption rights in the following terms, "It is the rule that where the mortgagor deeds the property to the mortgagee, the deed is presumed to be but a continuation of the security and the right of redemption is presumed to continue. This right is a favorite of equity and the transfer will operate as a bar only when it clearly appears both parties intended an absolute sale." Swartz v. Stone, 243 Iowa 128, 132, 49 N.W.2d 475, 477.

Under a variety of circumstances we have adhered to the above principles. One of the leading Iowa cases in this field,

oft relied upon by debtors seeking to redeem their property, is Guttenfelder v. Iebsen, 230 Iowa 1080, 1084, 300 N.W. 299, 301, where we said: "To summarize the law applicable to this case, such a transaction as appellants seek to enforce will be closely scrutinized and upheld only where it is perfectly fair, based upon adequate consideration and it clearly and unmistakably appears that an absolute sale and not a transfer for security only was within the contemplation of the parties. In arriving at the intention of the contracting parties, courts look behind the form of the instruments to the real relationship between the parties. Fort v. Colby, 165 Iowa 95, 121, 144 N.W. 393. The instruments must be read in the light of the surrounding circumstances and the practical construction which the parties themselves placed thereon. McGuire v. Halloran, 182 Iowa 209, 219, 160 N.W. 363, 165 N.W. 405; McRobert v. Bridget, 168 Iowa 28, 32, 149 N. W. 906; Keeline v. Clark, 132 Iowa 360, 364, 106 N.W. 257.'"

III. In Guttenfelder there was a creditor-debtor, mortgagor-mortgagee relationship present at the inception of the questioned transaction. This is an important factor but not a necessary element to the application of the principle. It is enough if the creditor-debtor relationship is created by the transaction itself. In Harrington v. Foley, 108 Iowa 287, 79 N.W. 64, the plaintiff furnished the money to help defendant redeem her land. No prior creditor-debtor relationship existed between the parties.

In Fort v. Colby, 165 Iowa 95, 116, 144 N.W. 393, 401, the debtor was also under pressure from creditors other than the grantee of the deed executed in that case. Fort owed Colby nothing but needed money to pay others. The factual situation is so similar to the case at bar that our conclusion reached there bears repeating. "Concerning the nature of the transaction culminating in the conveyances and contracts made in October 2 and December 3, 1901, we think the evidence quite conclusively establishes the truth of plaintiff's claim that it was in substance and effect a loan or advancement of money for the use of plaintiff, repayment of which was secured by a conveyance of the lands; that plaintiff was asking a loan, and that he then believed and understood the effect of the deed to be an actual loan of the money to relieve his necessities, and the conveyance to be in the nature of mortgage security for its repayment there is scarcely room for doubt; that such was also the understanding of C. H. Colby, and the basis upon which the negotiations were opened and carried on is but little less certain." From the factual recitation in this case, we conclude we also have a situation where plaintiff needed money to pay others and both parties treated the transaction as giving rise to a debtor-creditor relationship. Cf. Brown v. Hermance, supra.

■ In Fort v. Colby, supra, this court held at page 102, 144 N.W. at page 395: "It is a further well-established rule that, where a conveyance absolute upon its face is accompanied by a contract or agreement, by which the grantee undertakes to reconvey the land to the grantor on specified conditions, and the terms of such agreement or the circumstances under which it was made renders it doubtful whether a mortgage or conditional sale was intended, the courts will hold it to be a mortgage. (Cases cited.)" Brown v. Hermance, supra; Greene v. Bride & Son Const. Co., 252 Iowa 220, 106 N.W.2d 603, Collins v. Isaacson, Iowa, 158 N.W.2d 14, 18.

IV. The farm in question was worth a great deal more than the $5000 advanced by defendant. Except for the testimony of Mrs. Wasson, who said the farm was worth just what they paid for it, the lowest estimate of the 1961 value of the property was $12,000. Plaintiffs estimated its value in 1961 at $21,000 and at $27,000 in 1965 (when the option was exercised). A real estate agent estimated the values at $12,000 in 1960 and $15,000 in 1965. A neighboring farmer valued the farm at $16,000 in 1961 and at $22,500 in 1965. On cross-examination the farmer related that

he had offered plaintiff $10,000 for a one-half interest in the farm in 1963 (a time that was well within plaintiffs' option period). The offer was declined.

■ Inadequacy of consideration is a strong circumstance tending to show the transaction was intended to be a mortgage. Greene v. Bride & Son Const. Co., 252 Iowa 220, 106 N.W.2d 603 and cases therein cited.

■ V. Retention of possession by the grantor is considered a circumstance consistent with the claim of creditor-debtor relationship and inconsistent with the theory of absolute conveyance. Guttenfelder v. Iebsen, supra. But such a circumstance, or the converse relinquishment of possession by the grantor, is not conclusive. In Fort v. Colby, supra, we said at page 130 of 165 Iowa, at page 406 of 144 N.W.: "Indeed, it is not at all an unusual circumstance that a deed given as a mortgage is accompanied or followed by a surrender of possession or by a lease to the grantor." Cf: McGuire v. Halloran, 182 Iowa 209, 165 N.W. 405, Keeline v. Clark, supra.

■ We have often said each case must be considered on the totality of its own facts. Brown v. Hermance, supra. So it is here. The testimonies of both the Kochs and the Wassons indicate a security transaction was intended when the instrument was signed in 1961. The straitened circumstances of the Kochs, the inadequacy of consideration, the execution and delivery of an option to repurchase, unavailability of legal advice for the grantor, (Koob v. Zoller, 231 Iowa 1106, 1110 and citations, 3 N.W.2d 130) are all classic circumstances pointing to a debtor-creditor relationship. The courts look behind the form of the instrument to the real relationship between the parties. Collins v. Isaacson, Iowa, 158 N.W.2d 14, 18.

Once such relationship has been established the rights of the parties are those fixed by law and not what the parties conceive them to be. The right of redemption is presumed to continue and, as before indicated, a transfer, absolute on its face, will operate to bar redemption only when it appears both parties intended an absolute sale. Swartz v. Stone, 243 Iowa 128, 49 N.W.2d 475.

We have said the grantor in a case such as this carries the burden to show by clear and convincing evidence that the deed was intended to be something other than what it purports to be. Brown v. Hermance, supra. The evidence here meets the standard.

VI. Since we hold the deed to defendants with reciprocal option to purchase was in fact and in contemplation of law a security transaction, it now remains to determine the conditions upon which plaintiffs may exercise their equity of redemption. Plaintiffs insist they were entitled to possession or the fair rental value of the property while it was occupied by defendants. The deed and option do not so provide. The deed, being absolute, allowed possession to be taken by defendants. The option provides: "It is mutually agreed by and between the parties that Sellers will farm this real estate during the life of this option commensurate with farming practice in the area." But plaintiffs argue: "To permit defendants to collect interest on the $5000 loan, and at the same time receive the fruits of production on the 218 acre farm during the period from February, 1961 to the present, would be to reward the defendants for the type of security which they exacted from plaintiffs, and in effect authorize and approve a return on money loaned far in excess of the lawful interest rate. It would be an approval to a usurious transaction—giving defendants both interest and full use and return on the property during the term the loan was outstanding."

This argument is supported by the general rule recognized in the annotation found at 95 A.L.R. 1231, 1232: "It may be stated as a general rule that, to constitute usury, it is not essential that the loan or the interest thereon is to be repaid in money, but usury may be predicated on an agreement by which a lender of money is

to receive, or may receive at his option, in lieu of interest, property or services the value of which is not contingent or speculative, and is so palpably in excess of legal interest as to show an intent to evade the usury law. Numerous cases support this rule." The annotation notes numerous cases where the courts under special circumstances, refused to apply the rule. We do not reject the rule but conclude it should not be applied here.

 The evidence does not support a finding of intent to evade usury laws. The record, taken as a whole, indicates the farm was somewhat run down when Wassons began to farm it and their good husbandry practices did much to improve it, over and above any permanent improvements they might have made. Plaintiffs did not plead, nor do they now argue, the rule should be so strictly applied as to work a forfeiture of all interest under our section 535.5, Code 1966. Plaintiffs, who seek equity, must be willing to do equity. We find defendants should not be charged with rental value of the property for the crop years covering occupancy with the express written consent of plaintiffs.

The situation for the crop years March 1965 through March, 1968 is quite different. The option provided notice of exercise was to be given at least 30 days prior to March 1st of the year of exercise. The parties contemplated possession would .be given by March 1st following such notice. In any event, plaintiffs would be entitled to possession within a reasonable time after the option was exercised.

Defendants agree a notice exercising the option was timely served on them but contend the further requirement, i. e., payment of the amount due, was not performed. After the notice was served the parties entered into extended discussions which are the subject of sharp disagreement as to content. These disagreements are largely academic. Defendants did not inform plaintiff of the exact amount claimed to be due. Plaintiff could not tender the amount due and will not be able to do so until the

various costs are made known and determined. Steele v. Northup, 259 Iowa 443, 143 N.W.2d 302. We also note defendants did not have the abstract continued to date as required.

The record is clear. Defendants have had possession of the property from February 1965 to September 1967, the date of the trial court's decree. We are not informed that possession has changed pending this appeal. The plaintiffs were entitled to possession on or about March 1, 1965 after giving notice of exercise of the option.

 Plaintiffs' evidence shows the fair rental value of the property for the crop year of 1965 was $1400 and for the 1966 crop year $1500. There is no evidence of rental value for the 1967 crop year or the 1968 crop year. Evidence must be taken to determine such values and the amount of taxes paid for years 1965 to date. Since the trial court initially provided defendants with time to show their costs of permanent improvements, if any, they may still make such showing on remand, subject to the conditions in the original decree.

Defendants are entitled to return of their initial $5000 plus $300 per year since February 1961, plus reimbursement for all taxes paid on the subject property since February 17, 1961, with interest on such tax payments, plus cost of permanent improvements, if any. Plaintiffs are entitled to an offset against such amounts in the sum of $1400 for rental value for the 1965 crop year; $1500 for rental value for the 1966 crop year and such rental values as shall be shown by the evidence to be reasonable for the crop years of 1967 and 1968.

Since this controversy involves farm land, possession should be retained by defendants until the 1968 crops are seasonably harvested. At that time defendants shall surrender possession to plaintiffs. Upon determination of the amount due from plaintiffs to defendants, plaintiffs shall be given a reasonable time, to be fixed by the court, to pay such sum. De-

fendants shall be ordered to convey legal title to the property in question to plaintiffs, deed and abstract of title continued as contemplated to be delivered upon payment into court of the amount due. If defendants fail to execute the deed as ordered, the court shall proceed as authorized by Iowa Code, 1966, sections 624.29 et seq. Costs of this action are assessed to defendants.

For further proceedings not inconsistent with this opinion this case must be and is:

Modified and Remanded.

All Justices concur.