Soren **SORENSON**, Plaintiff-Appellee,

v.

Reginald **OLSON**, Defendant-Appellant.

**Civ. No. 9109.**

Supreme Court of North Dakota.

Nov. 21, 1975.

K. M. Knutson, Minot, for appellant.

McGee, Hankla, Backes & Wheeler, Minot, for appellee, argued by Richard H. McGee, Minot.

PEDERSON, Judge.

After a trial to the court without a jury, it was adjudged that Olson is estopped from claiming title to Lots 1 through 5, Linha's Second Addition to the City of Minot, and he was ordered to vacate the premises. Olson appeals. We affirm.

In December 1960 Jaromir B. Linha, the record owner, contracted to sell Lots 1 through 5 to Olson. The contract was not recorded but Olson took possession. Also, in December 1960, Linha conveyed Lot 1 to Olson by warranty deed. On January 11, 1961, Linha conveyed Lots 2 through 5 to E. E. Monagin by warranty deed and, on January 12, Olson conveyed Lot 1 to Monagin by warranty deed. On the same day Olson gave Monagin a mortgage on Lots 1 through 5. On August 2, 1961, Linha gave Monagin a mortgage on Lots 1 through 5 and on January 25, 1962, he gave him another mortgage on the same lots.

Monagin died on December 30, 1963, and on June 8, 1964, the Ward County court authorized the Monagin estate to sell Lots 1 through 5 at private auction. Legal notice that the lots were for sale by the estate was published in the Minot Daily News on June 10 and 17, 1964.

Olson and Sorenson met the first time in 1968 or 1969, and in 1970 Olson informed Sorenson of the availability of the lots and either invited Sorenson to purchase them or to pay off Olson's debt to Monagin.

An employee of Monagin testified that Monagin's only interest in the lots was a security interest. In the probate the lots were listed as real estate but appraised at one dollar. Subsequently, the lots were re-appraised at $5,000, which slightly exceeds the $4,735 balance due at that time on various loans from Monagin to Olson. The record does not show the value of the lots in 1970 when Sorenson purchased them for $4,735 from the Monagin estate. Although it is not clear from the receipt issued whether Olson or Sorenson was the purchaser, payment was made by Sorenson, the Ward County court confirmed the sale to Sorenson, and title was conveyed to Sorenson by executor's deed. No appeal has been taken from the action of the probate court.

Taxes on Lots 1 through 5 were paid by Linha in 1960, by Monagin in 1961 through 1964, and by Sorenson from and after 1965. Sorenson invested large sums of money in developing and improving the property in 1970, 1971, 1972, and 1973, and mortgaged the property to Gate City Savings and Loan Association. Improvements were paid for by Sorenson through Olson. When Sorenson paid for any improvement and when he loaned Olson money for his personal use, he usually obtained Olson's signature on a partially completed promissory note form or on a scrap of paper with vague notations as to purpose. Sorenson explains that this was his method of keeping a record and these notes would not be payable unless Olson decided to purchase the property from him.

When the notes were offered as exhibits, Olson objected to their admission for pur-

poses of showing any obligation from Olson to Sorenson, but conceded that they could be admitted as business records. The sum of these notes exceeds $296,000, none of which has been paid. Olson does not offer to pay them now and Sorenson has made no efforts to collect. Olson resided on and operated a variety of businesses on these lots from 1960 until the time of trial. The relationship between Olson and Sorenson between 1970 and 1974 is difficult to describe other than to say it was unusual.

■ In 1974 Sorenson brought a forcible detainer action in county court to oust Olson from the property. When a real estate title question arose, the case was transferred to district court. The district court, after trial, concluded that Olson was entitled to and had received an accounting, and that he was estopped from claiming title to the lots. Olson does not assert that the Court erred in concluding that he was estopped or that he is entitled to a further accounting but claims that the issues are: (1) the Monagin estate had only a security interest in the lots, (2) the Monagin estate was neither seized in or possessed of the lots, (3) there was no purchase of the lots by Sorenson from the estate, (4) the deed to Sorenson was champertous and void, (5) Sorenson's title does not permit him to challenge Olson's right of possession, and (6) the evidence does not support the trial court's findings.[1]

■ Under the circumstances there is no reason for us to specifically consider issues numbered 1 through 5. We are left to a consideration of issue number 6—whether the evidence supports the findings. When no specific finding is challenged on appeal but all are attacked generally by a claim that the evidence does not support the findings, we determine only whether any finding on a controlling question is not supported by substantial evidence.

Olson bases his claim on the contract for deed he entered into with Linha and possession of the property. He asserts that the instruments of conveyance which were given to Monagin were, in fact, given as security for money owed by Olson to Monagin and, as such, Monagin did not have more than a mortgagee's interest to convey to Sorenson.

■ It has long been the rule that when determining whether a deed is in fact a mortgage the court looks at all the surrounding circumstances. *Hyland v. Tousley*, 67 N.D. 612, 275 N.W. 340 (1937). But, as this court pointed out in *Ginter v. Ginter*, 63 N.W.2d 394, 396 (N.D.1954):

> "In considering whether a deed was executed for purposes of a sale or for purposes of security, and therefore a mortgage, the essential thing is to determine the intention of the parties at the time of the transaction."

If the evidence is to show that the instruments were given for security purposes, it must be clear and convincing. *Jasper v. Hazen*, 4 N.D. 1, 58 N.W. 454 (1894).

A further limitation on the evidence available is made by the parol evidence rule as embodied in North Dakota statutes, which, as we stated in *Gajewski v. Bratcher*, 221 N.W.2d 614, 640–641 (N.D. 1974):

---

**1.** Section 28–18–09, N.D.C.C., formerly required service of specifications of errors with the notice of appeal. This statute was superseded by the Rules of Appellate Procedure, effective March 1, 1973. We note that our decision in *Gajewski v. Bratcher*, 221 N.W.2d 614 (N.D.1974), may have left the inference that specifications of errors are still required. Although decided in 1974, *Gajewski* involved an appeal taken before March 1, 1973. It would be a reasonable interpretation of Rules 10, 28, and 30, N.D. R.App.P., that an appellant's brief or appendix should specify the issues explicitly enough so that a de novo review is not necessary to a consideration of those issues. When the only review available is pursuant to Rule 52(a), N.D.R.Civ.P., lawyers should consider the advisability of pointing the issues at specific findings or the lack of a necessary specific finding.

" * * * forbid and preclude the admission of oral testimony in equitable actions to prove that a deed, complete, *unambiguous* and absolute in its terms, * * * was executed and delivered as security only, subject to the right to repurchase or the right of redemption by the grantors." [Emphasis supplied.]

It is true that each instrument, taken separately, is unambiguous on its face. If the instruments of conveyance are read together, as they should be under § 9–07–07, N.D.C.C., the result is clearly ambiguous. It seems unlikely that Monagin would accept three mortgages on these lots as security for loans made to Olson if Monagin already owned the lots. In view of this ambiguity, parol evidence may be accepted to explain the ambiguity.

Although Monagin is unavailable to testify, the testimony shows that Linha and Olson both viewed the instruments as security for money owed to Monagin rather than as instruments passing title. The record shows that Olson had financial problems at the time the transactions were made. It also shows that Olson continued in possession of the property after the transactions took place and that the debts which were alleged to be secured continued after the deeds were executed. All this evidence indicates that the deeds were in fact given as mortgages rather than as genuine instruments passing title. *Koch v. Wasson*, 161 N.W.2d 173 (Iowa 1968); *Gagne v. Hoban*, 280 Minn. 475, 159 N.W.2d 896 (1968).

The fact that the deeds were given as mortgages, however, does not dictate that, as against Olson, Sorenson could not be found to be owner of Lots 1 through 5. There are other factors which come into consideration. Section 31–11–06, N.D.C.C., states:

"When a party, by his own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, he shall not be permitted to falsify it in a litigation arising out of such declaration, act, or omission."

This court applied this statute in *Neset v. Rudman*, 74 N.W.2d 826, 831 (N.D. 1956), in saying, "he who by his language or conduct leads another to do what he would not have otherwise done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted."

In *Hutton v. Korynta*, 218 N.W.2d 177 (N.D.1974), *Tostenson v. Ihland*, 147 N.W.2d 104 (N.D.1966), and *Sittner v. Mistelski*, 140 N.W.2d 360 (N.D.1966), this court elaborated on the above general estoppel principle when it set out the four-step test for determining when a party is estopped from asserting title to property. We said:

"For a person who has made admissions by his declarations or conduct affecting title to property to be estopped from asserting his right to the title, it must appear, first, that he was apprised of the true state of his own title; second, that he made the admission with the express intention to deceive, or with such careless and culpable negligence as to amount to constructive fraud; third, that the other party was, not only destitute of all knowledge of the true state of the title, but of the means of acquiring such knowledge; and, fourth, that the other party relied directly upon such admission and will be injured by allowing its truth to be disproved." *Sittner v. Mistelski*, 140 N.W.2d 362.

In this case there is substantial evidence from which the trial court could have concluded that Olson's action meets all four of the requirements of this test.

The evidence is conflicting as to whether Olson invited Sorenson to purchase the lots or merely invited him to pay off Olson's debt to Monagin. The evidence is also conflicting as to whether Olson ac-

quiesced in Sorenson's investments in improvements on the lots or whether Sorenson was loaning money to Olson for investment in these improvements. We find no clear error in the lower court's finding that Olson is estopped from claiming any interest in Lots 1 through 5 even though there is evidence which supports the opposite conclusion.

We are not unmindful of what we said in *Gajewski*—that actual knowledge of the open, notorious, and peaceful possession of real property by one other than the grantor is sufficient to charge the purchaser thereof with knowledge of the rights of the occupant. Nor do we overlook the principle that Olson's silence as to his interest, *alone* cannot operate as an estoppel. See 31 C.J.S. Estoppel § 71, at 436.

The trial court found that Olson had received a full accounting. Olson did not introduce substantial evidence in support of a further accounting and, on appeal, he does not pursue it, electing instead to rely on his claim to title.

When findings of fact made by the trial court are brought into this court for review as they may be under Rule 52(a), N.D.R.Civ.P., they are, like legal conclusions, entitled to all the presumptions in favor of their correctness. The party alleging error has the burden of clearly demonstrating the existence of error. Where the finding is based upon oral evidence, we, not having had the opportunity to see and hear the witnesses, do not weigh the evidence but give full effect to the printed words in the transcript, together with the full effect of the inferences and impressions that might reasonably be drawn therefrom.

Although the record contains testimony supporting Olson's arguments, we find substantial evidence in support of each of the trial court's findings. They are accordingly not clearly erroneous under Rule 52(a), N.D.R.Civ.P., and we affirm the judgment. Since Linha was not a party, this decision has no effect on his rights, if any.

ERICKSTAD, C. J., and PAULSON, SAND and VOGEL, JJ., concur.