# IN THE COURT OF APPEALS OF IOWA

No. 14-1862
Filed April 6, 2016

RONALD C. BROWNLEE, GLENDA F.
BROWNLEE, DANIEL R. BROWNLEE,
MEGAN L. BROWNLEE, d/b/a
BROWNLEE FARM PARTNERSHIP,
    Plaintiffs-Appellees,

vs.

JAMES D. JAMISON, Individually, JEFF
JAMISON, Individually and Jointly, d/b/a
JAMISON & SONS, a/k/a JAMISON &
SONS AG SERVICES, a/k/a J&S AG
SERVICES, and MARVIN MITCHELL,
a/k/a RUSS MITCHELL d/b/a MITCHELL
CONSULTING, a/k/a MARK HENDRICHS,
and JAMES D. JAMISON IRREVOCABLE
TRUST, RONALD GALE MCDOWELL,
Trustee of the James D. Jamison Irrevocable Trust,
    Defendants-Appellants.

_____

        Appeal from the Iowa District Court for Clarke County, Sherman W.

Phipps, Judge.


        Defendants appeal from an adverse grant of summary judgment on the

plaintiffs' claim for equitable mortgage.  **REVERSED AND REMANDED.**

        John P. Roehrick of Gaudineer & George, L.L.P., West Des Moines, for

appellants.

        Jeff W. Wright and Joel D. Vos of Heidman Law Firm, L.L.P., Sioux City,

for appellees.

        Heard by Danilson, C.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

The defendants appeal from an adverse grant of summary judgment in this action involving the equitable mortgage doctrine. The district court held the plaintiffs had established an equitable mortgage as a matter of law. We conclude there is a triable issue of fact regarding whether the parties intended a sale of real property of only an equitable mortgage. We thus reverse and remand for further proceedings.

I.

The summary judgment record establishes the following. Ronald, Glenda, Daniel, and Megan Brownlee d/b/a Brownlee Farm Partnership owned and operated a family farm. By 2009-2010, the farming operation was in financial straits. Between November 25, 2009, and March 2, 2010, Ronald and Daniel forged the endorsement of Farmer's Trust and Savings Bank (hereinafter "FTSB") on certain checks made payable jointly to the bank and the Brownlees and deposited the checks into the farm's accounts. FTSB was a creditor of the farming operation.

In July of 2010, FTSB commenced foreclosure proceedings on the farm. Around the same time, the Brownlees saw an advertisement in the Des Moines Register offering "refinancing/operating lending help." The advertisement was placed in the Des Moines Register by Marvin Mitchell. The Brownlees met with Mitchell to discuss their financial situation.

On March 28, 2011, the Brownlees entered into a Consulting Agreement with Mitchell through Jamison & Sons Ag Services. The agreement provided

Mitchell would provide consultation and other services to the Brownlees, including advice on reorganization, efforts to renegotiate and restructure the debt, efforts to obtain new financing, and efforts to obtain loan approval. The agreement also required the Brownlees to purchase their seed, herbicide, fungicide, and insecticide from Jamison & Sons Ag Services. The agreement also provided the "Client shall pay Consultant . . . an additional sum of 2% of the gross loan amount or amount of credit applied for/restructured amount/reduced amount arranged for, obtained by or obtained from efforts of the Consultant for Client." All late fees incurred a 1.5 percent late charge. The agreement also stated "unpaid fees . . . attach as 1st secured party to loans to be dispersed to Client and property of Client used to receive the loan(s) or restructuring." On March 28, 2011, the Brownlees signed an information release to give Jamison & Sons Ag Services access to the Brownlees' financial information.

The decrees of foreclosure were entered on April 4, 2011. On April 19, 2011, FTSB sent Mitchell the Brownlees' current payoff schedule in the mail. By this time, the bank was aware the Brownlees had forged FTSB's endorsements on certain checks and misappropriated the funds. In the payoff schedule provided to Mitchell, there was a line item documenting the amount still owed to satisfy the claim of the insurance company that compensated the bank on the forgery loss. It was identified in the schedule as "Forgery Ins."

On April 27, 2011, the Brownlees entered into a Repurchase Agreement. The Repurchase Agreement provided the Brownlees would sell their farm property to James Dean Jamison in exchange for him "settling all current debts

and/or current fees due [FTSB]" The settlement amount was not to "exceed the amounts as represented in attachments N, O & P or $1,800,000.00 whichever is less." The agreement stated:

> This amount will be paid by buyer as follows. $10,000.00 paid upon execution of this agreement to the David Leitner Law Firm Trust account, $121,522.76 paid upon agreement between buyer and Farmer's Trust & Savings Bank of clear lien free possession of the above named property to farm by the buyer in 2011, balance to be paid in full upon Farmer's Bank & Trust and sellers providing agreeable payoffs and clear and merchantable title free of any and all liens or claims to buyer and transferring any 1st mortgage rights to buyer along with all satisfaction of buyer's closing request including but not limited to buyers due diligence addendum Attachment Q and requested closing information.

The Repurchase Agreement stated, "Sellers agree to offer to repurchase the above named property on or before December 31, 2011 from the buyer for all of the amounts paid in regards to the above property by the buyer, plus 1% per month interest on all monies paid by buyer." The repurchase agreement also gave Jamison & Sons Ag Services a "1st secured interest in favor of the buyer from the sellers on the above named property for all crops, crop insurance or proceeds of crops grown or intended to be grown on the above property in 2011." The agreement allowed the Brownlees to remain on the property as renters until December 2011, with rent of $135,000 due on November 15, 2011.

On August 16, 2011, Mitchell sent the Brownlees an invoice for debt restructuring services in the amount of $36,102.47 due by August 19, 2011. On August 19, 2011, the Brownlees executed warranty deeds conveying their property to the James D. Jamison Irrevocable Trust. On November 26, 2011, Mitchell sent the Brownlees a letter stating the money due to J&S Ag Services

was past due. In the letter Mitchell stated: "You are way delinquent with J & S Ag Services (Jamison). Be aware that another foreclosure will more likely be coming from Jamison should your debts to him be let go much longer. Mr. Jamison has been more patient and accommodating to you people than any of your past creditors." The Brownlees did not satisfy the debt or make an offer to repurchase the property. On February 3, 2012, the James D. Jamison Irrevocable Trust sold the farmland to a third party for $3.25 million.

As the Brownlees were attempting to resolve their financial situation, the federal government was investigating the Brownlees' check forgeries. Daniel was indicted on March 21, 2012. In September 2012, Daniel pleaded guilty to bank fraud. In October 2012, Ronald pleaded guilty to bank fraud. He deceased prior to his sentencing.

The plaintiffs filed their petition on July 30, 2012, against James D. Jamison, Jeff Jamison, Jamison & Sons, Jamison & Sons Ag Services, Marvin Mitchell, Mitchell Consulting, the James D. Jamison Irrevocable Trust, and Ronald Gale McDowell, Trustee of the James D. Jamison Irrevocable Trust. The plaintiffs' petition was in two counts: (1) equitable mortgage; and (2) fraudulent inducement and misrepresentation. The parties filed cross motions for summary judgment. The plaintiffs contended they had established an equitable mortgage as a matter of law. The defendants contended there was an issue of fact on the equitable mortgage claim or that they were entitled to judgment as a matter of law because the Brownlees acted with unclean hands. Specifically, the Brownlees had misled the defendants regarding the forgeries. The district court

denied summary judgment on the defendants' motion. The court concluded "there is a material fact as to whether or not the forgeries in any way impacted or influenced the parties in entering into the Repurchase Agreement." The district court granted the plaintiffs' motion for summary judgment on count one, holding the Brownlees established an equitable mortgage as a matter of law. This is a timely interlocutory appeal from the district court's ruling on the parties' motions for summary judgment.

II.

We review the district court's summary judgment ruling for the correction of legal error. *See Osmic v. Nationwide Agribusiness Ins. Co.*, 841 N.W.2d 853, 858 (Iowa 2014). Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). The party seeking summary judgment has the burden of establishing that the facts are undisputed and that the party is entitled to a judgment as a matter of law. *See Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 677 (Iowa 2004). The party resisting the motion "cannot rely on the mere assertions in his pleadings but must come forward with evidence to demonstrate that a genuine issue of fact is presented." *Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 827 (Iowa 2007).

The court reviews the summary judgment record in the light most favorable to the party resisting the motion for summary judgment and "indulge[s]

in every legitimate inference that the evidence will bear in an effort to ascertain the existence" of a genuine issue of material fact. *See Crippen v. City of Cedar Rapids*, 618 N.W.2d 562, 565 (Iowa 2000). If the summary judgment record shows that the "resisting party has no evidence to factually support an outcome determinative element of that party's claim, the moving party will prevail on summary judgment." *Wilson v. Darr*, 553 N.W.2d 579, 582 (Iowa 1996). Our court "can resolve a matter on summary judgment if the record reveals a conflict concerning only the legal consequences of undisputed facts." *Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 501 (Iowa 2013).

### III.

We turn to the merits of the issue. An equitable mortgage is a lien on property to secure the payment of money that lacks the essential features of a legal mortgage. Our courts "have always recognized that 'a conveyance absolute on its face may, by proper evidence, be shown to be but a mortgage.'" *Steckelberg v. Randolph*, 404 N.W.2d 144, 148 (Iowa 1987) (alterations omitted) (quoting *Trucks v. Lindsey*, 18 Iowa 504, 504 (Iowa 1865)); *see also Lovlie v. Plumb*, 250 N.W.2d 56, 59 (Iowa 1977) ("It is well settled a transfer of title absolute on its face, if intended as security alone, will be deemed a mortgage. And such intent may be shown by parol."). In determining whether a conveyance or mortgage was intended, each case must be decided "on the totality of its own facts." *Koch v. Wasson*, 161 N.W.2d 173, 178, 178 (Iowa 1968). The court may look beyond the instrument itself and at the relationship between the parties. *Steckelberg*, 404 N.W.2d at 149; *Koch*, 161 N.W.2d at 178; *Brown v. Hermance*,

10 N.W.2d 66, 68 (Iowa 1943). Parol evidence may be reviewed to determine the intent of the parties. *See Steckelberg*, 404 N.W.2d at 149. The reason the court admits parol evidence is to "show that an absolute deed is in reality . . . a mortgage . . . [so] that a court of equity will not construe a statute designed to prevent fraud in such a manner as to produce fraud." *Bigler v. Jack*, 87 N.W. 700, 701 (Iowa 1901). The ultimate question is "whether [the parties] intended for the deed to serve as security for some obligation; if they did, the courts will convert the transaction into a mortgage by operation of law." Restatement (Third) of Mortgages § 3.2 cmt. a (Am. Law Inst. 1996).

The grantor "carries the burden to show by clear and convincing evidence that the deed was intended to be something other than what it purports to be." *Koch*, 161 N.W.2d at 178. *See, e.g., Steckelberg*, 404 N.W.2d at 148-49 ("If, however, a deed is to be construed as a security instrument, 'the supportive evidence must be clear, satisfactory, and convincing.'" (quoting *Lovlie*, 250 N.W.2d at 59)); *Collins v. Isaacson*, 158 N.W.2d 14, 18 (Iowa 1968) ("In order that a deed be held a mortgage the evidence must be clear, satisfactory and convincing.").

The summary judgment record reveals several facts that could show the parties intended only a security arrangement. First, inadequate consideration tends to show the "transaction was intended to be a mortgage." *Koch*, 161 N.W.2d at 178; *Bigler*, 87 N.W. 702 ("If such inadequacy appeared, it would, no doubt, be strong evidence in support of [a] contention."); *Hughes v. Sheaff*, 19 Iowa 335, 341 (Iowa 1865) (stating it is strong evidence a security was intended

when "the consideration for the conveyance was much less than the value of the property"). In this case, the Brownlees transferred their property to the James D. Jamison Irrevocable trust for $1.8 million in exchange for settling their debts. Shortly thereafter, the Jamison Trust sold the property to a third party for $3.25 million. This could be evidence of inadequate consideration, but given the Brownlees' issues with the bank and financial distress, it may also be evidence of a purchaser taking a risk in a messy real estate transaction. Regardless, the "mere inadequacy of consideration is not sufficient to justify the conclusion that a deed absolute in form is intended as a mortgage." *Fort v. Colby*, 144 N.W. 393, 403 (Iowa 1913). Inadequacy of consideration is a material fact that should be considered along with other circumstances. *Id.*

Another indicator the parties intended a mortgage is the grantor retains possession of the property. *Koch,* 161 N.W.2d at 178. This "is considered a circumstance consistent with the claim of creditor-debtor relationship and inconsistent with the theory of absolute conveyance." *Id.* Here, the Brownlees retained possession of the deeded property. As with the prior factor, relinquishment of the property, however, is not conclusive. *Id.* "'[I]t is not at all an unusual circumstance that a deed given as a mortgage is accompanied or followed by a surrender of possession or by a lease to the grantor.'" *Id.* (citation omitted).

Another circumstance evidencing a security interest rather than a conveyance is the creation or existence of a debtor-creditor relationship. *See Steckelberg*, 404 N.W.2d at 149 ("A telltale sign that a deed, absolute on its face,

amounts only to an equitable mortgage appears where the transaction of which it is a part operates to create or continue as between the parties the relation of obligor and obligee."). Here, the Jamisons had a creditor-debtor relationship with the Brownlees. For example, in the collection letter sent to the Brownlees, Mitchell stated "Mr. Jamison has been more patient and accommodating to you people than any of your past creditors." As with the other factors, however, this fact is just one of many relevant considerations.

The right to redeem the property is another circumstance that shows the parties intended a mortgage. "If the deed was intended as security, the settled policy of the law accords [the mortgagor] the right to redeem." *Brown*, 10 N.W.2d at 68. When a "mortgagor deeds the property to the mortgagee, the deed is presumed to be but a continuation of the security and the right of redemption is presumed to continue." *Koch*, 161 N.W.2d at 176 (citation omitted). Here, the Brownlees had the right to repurchase the property on certain conditions. The repurchase agreement stated the "Sellers agree to offer to repurchase the above named property on or before December 31, 2011 from the buyer for all of the amounts paid in regards to the above property by the buyer, plus 1% per month interest on all monies paid by buyer." It is not disputed the Brownlees did not repurchase the property or make an offer to repurchase the property on the terms and conditions provided.

There is also evidence, the defendants argue, the parties intended an absolute conveyance. First, the Jamison Trust was a third party and was not a party to the prior agreements. Second, the Jamisons argue there was no

landlord-tenant relationship. The defendants contend the rent referenced in the parties' repurchase agreement was repayment for the rent advanced by Jim Jamison to FTSB for the Brownlee's farming operation in 2011. The defendants argue there was no debtor-creditor relationship between the Brownlees and the Jamison Trust.

The ultimate inquiry in determining whether the parties intended a mortgage or conveyance is the parties' intent. "The conduct of the parties leading up to the making of a deed from mortgagor to mortgagee is frequently of great weight in determining whether the intent was to buy and sell or merely give security in a new form." *Davis v. Wilson*, 21 N.W.2d 553, 557 (Iowa 1946). "Likewise their subsequent conduct frequently throws light upon their understanding and intent in entering into the transaction." *Id.* Given the rather unique circumstances of this case, including the complicated transactional history, the interconnectedness of the defendants and their business operations, and the convictions of the Brownlees for forgery related to the financing of the farming operation, we cannot conclude the Brownlees established the existence of an equitable mortgage as a matter of law. *See Harper v. Kaczor*, No. 10-1833, 2011 WL 3925435, at *6 (Iowa Ct. App. Sep. 8, 2011) ("When, as here, the interpretation of a contract depends upon the credibility of extrinsic evidence, the question of interpretation should be determined by the finder of fact."); *see also Robinson v. Builders Supply & Lumber Co.*, 586 N.E.2d 316, 323 (Ill. Ct. App. 1991) (reversing summary judgment and remanding for trial on equitable mortgage claim); *New York TRW Title Ins. v. Wade's Canadian Inn & Cocktail*

*Lounge, Inc.*, 605 N.Y.S.2d 139, 141 (N.Y. App. Div. 1993) ("While an equitable mortgage thus cannot be ruled out as a matter of law, we cannot say on this record that it is warranted as a matter of law either. Rather, we discern the presence of factual issues with regard to the parties' intent."); *Pearson v. Gray*, 954 P.2d 343, 346 (Wash. Ct. App. 1998) (summarizing evidence tending to support the existence of an equitable mortgage but reversing grant of summary judgment where the "issue of the parties' intent is sufficiently presented" to create a triable issue of fact).

IV.

For the foregoing reasons, we reverse the district court's grant of summary judgment and remand this matter for further proceedings.

**REVERSED AND REMANDED.**